MATTHEW J. HAFEY (SBN: 167122)
mhafey@nicolaidesllp.com
PATRICIA A. DAZA-LUU (SBN: 261564)
pdazaluu@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
777 South Figueroa Street, Suite 750
Los Angeles, CA 90017
Telephone: (213) 402-1245
Facsimile: (213) 402-1246

Attorneys for Plaintiff
KINSALE INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KINSALE INSURANCE COMPANY, an Arkansas corporation,<br><br>Plaintiff,<br><br>v.<br><br>HYDROXIE LLC, a California Limited Liability Company; TIMOTHY R. SHAW; ADAM S. ISRAEL,<br>Defendants. | Case No. '26CV5265 BJC DDL<br><br>**KINSALE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF ATTORNEY'S FEES** |

Plaintiff Kinsale Insurance Company ("Kinsale"), for its Complaint for Declaratory Relief against Defendants Hydroxie, LLC ("Hydroxie"), Timothy R. Shaw, and Adam S. Israel (collectively, "Defendants") alleges as follows:

/ / /

/ / /

/ / /

## INTRODUCTION

1. In this insurance coverage action, Kinsale seeks a judicial determination pursuant to 28 U.S.C. §§ 2201 and 2202 that Kinsale never had a duty to defend, and therefore will have no duty to indemnify Defendants with regard to the pending lawsuit styled *Kristin Mills, personal representative of the estate of James Patrick Mills, on behalf of the estate and his survivors v. Gautam Savla a/k/a Mian Qamar a/k/a Gary Patel, et. al.*, County of Mecklenburg, North Carolina General Court of Justice Superior Division, Case No. 26CV038244-590 (the "*Mills* Action"). The *Mills* Action arises from James Patrick Mills' ("Pat Mills") ingestion of tablets on or about July 11, 2024, which allegedly caused Pat Mills' death (the "Incident") due to acute mitragynin ("Kratom" or "MG") and 7-hyrdoxymitragynine ("7-OH") intoxication. A true and correct copy of the Complaint in the *Mills* Action ("Underlying Complaint") is attached hereto as **Exhibit A** and incorporated in full as though set forth herein.

2. Kinsale issued a claims-made Life Sciences General Liability insurance policy, No. 0100370510-0, for the policy period May 7, 2025 to May 7, 2026, to Hydroxie, KAVAHH LLC and Ricco Management Company Inc (the "Kinsale Policy"). The Kinsale Policy is subject to limits of $1 million per claim and $2 million in the aggregate. The Kinsale Policy is also subject to a $25,000 per claim deductible. Pursuant to Policy Form LSC2023 1019, the Retroactive Dates – "Your Product" Endorsement, the retroactive dates of the Kinsale Policy are: March 1, 2024 for Hydroxie Products and May 7, 2025 for Kavahh Products. A true and correct copy of the Kinsale Policy (redacted to eliminate disclosure of sensitive financial and rating information) is attached as **Exhibit B** and incorporated herein by this reference.

3. As set forth in greater detail below, Kinsale contends that various terms, conditions, exclusions and endorsements of the Kinsale Policy apply to preclude coverage for the *Mills* Action, such that Kinsale never had a duty to defend

Defendants. Upon a determination by the Court that Kinsale never had a duty to defend, it is entitled to a declaration allowing it to withdraw from the defense of the *Mills* Action, reimbursement of the attorney's fees and costs it expended defending Defendants from the date of its reservation of rights (August 28, 2026) forward, and a declaration that it has no duty to indemnify Defendants for any settlement or judgment which may be rendered in the *Mills* Action.

**THE PARTIES, JURISDICTION AND VENUE**

4. Kinsale was and is a corporation organized under the laws of the state of Arkansas whose principal place of business is located in Richmond, Virginia. Kinsale is an eligible non-admitted carrier in California. Kinsale is therefore a "citizen" of the states of Virginia and Arkansas for purposes of diversity jurisdiction.

5. Hydroxie is a California Limited Liability Company with its principal place of business in Escondido, California. According to its December 24, 2025 Statement of Information filed with the California Secretary of State, its members are Adam S. Israel and Timothy R. Shaw. The members of Hydroxie are citizens of California and/or Arizona, as demonstrated further below. As such, Hydroxie is a "citizen" of the state of California and/or Arizona for purposes of diversity jurisdiction.

6. Public records indicate Timothy Shaw is physically present in and intends to remain in California. According to Hydroxie's December 24, 2025 Statement of Information, Mr. Shaw's business address is 306 W El Norte Pkwy, STE N 92, Escondido, CA 92026. (*See also*, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hydroxie-llc-709661-06252025.) Mr. Shaw is listed as the agent for service of process for Hydroxie at the Escondido address. Mr. Shaw is therefore a citizen of the state of California for purposes of diversity jurisdiction.

/ / /

7. Public records indicate Adam Israel does business in California and resides in Arizona. According to Hydroxie's December 24, 2025 Statement of Information, Mr. Israel's business address is 306 W El Norte Pkwy, STE N 92, Escondido, CA 92026. In addition, public records indicate that Mr. Israel owns property in Arizona, with his vehicle registered in Arizona. Mr. Israel is therefore a citizen of the states of California and Arizona for purposes of diversity jurisdiction.

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1332(a)(1). There is complete diversity of citizenship between Kinsale and Defendants. Kinsale is incorporated in Arkansas and maintains its principal place of business in Virginia, and is therefore a "citizen" of the states of Arkansas and Virginia. Hydroxie is domiciled in the State of California, while its members Adam Israel and Timothy Shaw are citizens of Arizona and/or California. No defendant maintains a domicile, is incorporated in, or maintains an office in the states of Arkansas or Virginia. Therefore, complete diversity exists.

9. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in that Pat Mills' widow Kristin Mills, the plaintiff in the *Mills* Action, seeks damages from Defendants with respect to the Incident, which Incident allegedly resulted in Pat Mills' death. Mrs. Mills requests both compensatory and punitive damages in excess of $25,000 on each of the four causes of action, as well as further recovery for: expenses for care and treatment incident to the injury resulting in Pat Mills' death; compensation for the pain and suffering of Pat Mills; reasonable funeral expenses; and the present monetary value of Pat Mills to Kristin Mills, their son, and Pat Mills' son. Given the severity of Mrs. Mills' allegations coupled with reasonably anticipated defense fees, the amount of controversy well exceeds $75,000. As such, an actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants have sufficient minimum contacts with this judicial district, with

Hydroxie domiciled in this District, to confer personal jurisdiction over Defendants in this Court.

## FACTUAL ALLEGATIONS

### A. The Underlying Action

11. Kinsale now sets forth a summary of Ms. Mills' allegations from her original Complaint in the *Mills* Action ("Underlying Complaint"). Kinsale recites these allegations to provide background as to the *Mills* Action, without opining on whether the allegations are true or whether Defendants are in any way responsible or liable to Mrs. Mills.

12. On or around July 10, 2026, Mrs. Mills filed the *Mills* Action against: Gautam Savla a/k/a Mian Qamar a/k/a Gary Patel, Sonia Savla a/k/a Sonia Thaker, Najiya Cranmer, High Life Enterprises Inc., High Life Management, LLC, GIS Enterprises Inc., Raaisha Enterprises, Inc., Suhail Thaker, Vaidehi Thaker, and VST Enterprises LLC d/b/a Vapor Smoke Shop (the "Underlying Selling Defendants"); and Thang Botanicals Inc. d/b/a 7ΩHMZ, Mithcell Hawood, Cecil Page, Joseph Merino, Gregory Dalli, Hydroxie, Mr. Shaw, and Mr. Israel (the "Underlying Manufacturing Defendants") (together, the Underlying Selling Defendants and Underlying Manufacturing Defendants are the "Underlying Defendants").

13. According to the Complaint in the *Mills* Action, on July 11, 2024, Mrs. Mills found her husband Pat Mills, aged 36, dead at their home in Lancaster, South Carolina. The night of his death, Mrs. Mills found Pat Mills on the floor near the downstairs bathroom of their home, blue and unresponsive. Mrs. Mills asserts that EMS crew arrived but was unable to find a pulse or revive Pat Mills, nor could the doctors at the closest hospital in Monroe, North Carolina. The Complaint in the *Mills* Action expressly alleges that Pat Mills "died of a massive overdose of Kratom and 7-OH that was sold to him at vape shops that the [Underlying Selling Defendants] operated." The Complaint in the *Mills* Action alleges that Kratom and 7-OH were "sold as natural substances that are safe, help the consumer feel better,

and which could even help the consumer overcome addition." Mrs. Mills alleges that Pat Mills began purchasing Kratom and 7-OH from the High Life Smoke shops and Vapor Smoke Shop in Charlotte, North Carolina believing they were safe and completely unaware of the dramatic difference in potency and addictive characteristics between kratom and 7-OH. The Complaint in the *Mills* Action alleges that Pat Mills became addicted to Kratom and 7-OH, suffering withdrawals when he was not high on the drugs. The Complaint in the *Mills* Action alleges that, in the 15 days before his death, Pat Mills spent over $5,600 on 7-OH products. The Complaint in the *Mills* Action alleges that Pat Mills' autopsy at the North Carolina Medical Examiner's Office included a toxicology test, which "revealed traces of lethal level of mitragynin and deadly additive 7-hydroxymitragynine" in Pat Mills' blood system. The Complaint in the *Mills* Action alleges that Underlying Defendants knew or should have known that their kratom products were not approved by the Federal Drug Administration ("FDA") and were unreasonably dangerous for human consumption. Further, the Complaint in the *Mills* Action alleges that Underlying Defendants knew that Pat Mills' addiction to kratom and 7-OH was likely.

14. With regard to the Underlying Manufacturing Defendants—inclusive of Hydroxie, Mr. Shaw, and Mr. Israel—the Complaint in the *Mills* Action alleges that the Underlying Manufacturing Defendants intentionally created and used packaging that included ineffectual warnings so that consumers would believe the Kratom and 7-OH were natural and safe. Regarding Hydroxie, Mr. Shaw, and Mr. Israel (collectively, the "Hydroxie Defendants"), the Complaint in the *Mills* Action alleges that the Hydroxie Defendants conspired to sell and distribute 7-OH despite knowledge it was a dangerous product. Further, an undated Request for Preservation of Evidence Letter from Chris Swecker, Esq. of Chris Swecker Law PLLC, counsel for Mrs. Mills, to Mr. Shaw ("Request Letter") alleges that Hydroxie-brand Kratom products were the subject of a June 25, 2025 warning letter from the FDA

("Warning Letter"). The Request Letter alleges that the Warning Letter stated Hydroxie's 7-OH brand kratom products were adulterated, contained an unsafe food additive, and had been reported to have opioid-like effects.

15. Based on the foregoing allegations, Mrs. Mills asserts Causes of Action for (1) the injury and wrongful death of Path Mills; (2) Negligence, Gross Negligence, and Willful and Wanton Action; (3) Fraud; and (4) Product Liability.

16. Mrs. Mills seeks compensatory damages; punitive damages; expenses for care and treatment incident to the Incident; pain and suffering of Pat Mills; funeral costs; compensation for the loss of reasonably expected income; services, protection, care, and assistance of Pat Mills; society, companionship, comfort, guidance, kindly offices, and advice of Pat Mills to Kristin Mills, their son, and Pat Mills' son; nominal damages; and attorneys' fees and litigation costs.

**B. Kinsale's Defense of the *Mills* Action**

17. Kinsale agreed to provide a defense to the *Mills* Action to Defendants subject to a written reservation of rights dated August 28, 2026.

## THE KINSALE POLICY

18. Kinsale issued a claims-made Life Sciences General Liability insurance policy, No. 0100370510-0, for the policy period May 7, 2025 to May 7, 2026, to Hydroxie, KAVAHH LLC and Ricco Management Company Inc (the "Kinsale Policy"). The Kinsale Policy is subject to limits of $1 million per claim and $2 million in the aggregate. The Kinsale Policy is also subject to a $25,000 per claim deductible. Pursuant to Policy Form LSC2023 1019, the Retroactive Dates – "Your Product" Endorsement, the retroactive dates of the Kinsale Policy are: March 1, 2024 for Hydroxie Products and May 7, 2025 for Kavahh Products.

19. Policy Form LSC0001 0524 of the Kinsale Policy provides, in relevant part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the "insured" against any "suit" seeking those "damages". However, we will have no duty to defend the "insured" against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for "damages" is limited as described in Section **III – LIMITS OF INSURANCE AND DEDUCTIBLE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or Supplementary Payments under Coverages **A** or **B.** In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" did not occur before the "retroactive date", if any, shown in the Declarations or after the end of the "policy period"; and

**(3)** A "claim" for "damages" because of the "bodily injury" or "property damage" is first made against

any "insured", in accordance with Paragraph c. below, during the "policy period" or any Extended Reporting Period we provide under Section **VI** – Extended Reporting Period.

**c.** All "claims" for "damages" because of "bodily injury" to the same person, including "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those "claims" is made against any "insured".

All "claims" for "damages" because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**d.** For the purposes of this insurance, all "bodily injury" or "property damage" logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision will be deemed to have first taken place at the time the first of such "bodily injury" or "property damage" took place. All such "bodily injury" or "property damage" will be deemed to be the same "bodily injury" or "property damage" even though the nature and extent of any resulting injury or damage may change and even though the resulting injury or damage may be continuous, progressive, cumulative, changing or evolving, and even though the resulting injury or damage may be or may involve a continuous or repeated exposure to substantially the same general harm.

**e.** Where there is no coverage under this Policy, there is no duty to defend.

* * *

**SECTION VII-DEFINITIONS**

. . .

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Claim" means a written demand for monetary "damages".

**5.** "Damages" means judgments, awards, and settlements that the "insured" becomes legally obligated to pay as a result of a covered "claim". "Damages" do not include declarative, injunctive or other non-pecuniary or equitable relief, punitive or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

. . .

**15.** "Named insured" means a person or entity specifically identified as a "named insured" in the Declarations or in an endorsement to this Policy.

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**23.** "Suit" means a civil proceeding in which "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

. . .

**26.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

* * *

20. The Kinsale Policy contains Policy Form LSC3057 1224, which contains the following Kratom, Opioids, and Narcotics Exclusion (the "Kratom Limitation"):

**LIMITATION – KRATOM**

. . .

**This endorsement modifies insurance provided under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**

**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

Solely for the purposes of this endorsement:

**A.** The following exclusions are added to this Policy:

This insurance does not apply to any:

**1. Kratom, Opioids, and Narcotics**

"Claim" or "suit" arising out of, related to, or in any way involving any actual or alleged:

**a.** Abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any:

**(1)** Opioid or narcotic drug, medication, or substance, kratom derived product, derivative of kratom, or opioid receptor antagonist of any type, nature, or kind, including but not limited to, codeine, fentanyl, hydrocodone, oxycontin, hydromorphone, meperidine, methadone, oxycodone, naloxone, morphine, oxymorphone, thebaine, tramadol, naltrexone, buprenorphine, or any other opioid or narcotic drug, medication, or substance of any type, nature, or kind, whether naturally occurring, semisynthetic, or independently synthesized; or

**(2)** Controlled substance as defined by or included in the schedules of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, any amendments thereto, or any similar provisions of any state or local law;

**b.** Failure to provide an environment safe from any actual or alleged abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above;

**c.** Failure to warn or inadequacy or absence of any warning related to the dangers of the environment that could contribute to or the consequences of any abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above;

**d.** Failure or inadequacy of any controls, practices, or procedures to prevent, suppress, or report behavior relating to any actual or alleged abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above;

**e.** Abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above and that:

**(1)** Seeks recovery of economic costs including costs for medical, police, or emergency services;

**(2)** Alleges interference with a right common to the general public including, but not limited to, claims for nuisance; or

**(3)** Seeks injunctive or other non-pecuniary relief relating such abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use;

or

**f.** Provision of or failure to provide any first aid or medical treatment, or otherwise handle or respond after any abuse, misuse, illicit use, overuse, unlawful

distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above.

This exclusion applies even if the claims against any "insured" allege negligence including, but not limited to negligence or other wrongdoing in the supervision, hiring, employment, training, or retention of others by that "insured".

This exclusion applies to any "claim" or "suit" regardless of whether any excluded act listed in items **a.** through **f.** above is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged injury or damage arises out of a chain of events that involves or includes any excluded act listed in items **a.** through **f.** above.

We shall have no duty to defend or indemnify any "insured" against any "claim" or "suit" or other proceeding alleging "damages" arising directly or indirectly out of, related to, or in any way involving any injury or damage to which this exclusion applies. This exclusion also applies to any obligation to share "damages" with, repay, or indemnify anyone else against whom "damages" are sought because of such injury or damage.

However, this exclusion does not apply to any "bodily injury", "property damage", or "personal and advertising injury" caused by a "defect in manufacturing" of "your product".

…

**D.** The following definitions are added to this Policy:

…

"Defect in manufacturing" means any deficiency, inadequacy, or dangerous condition of "your product" caused by an error in the manufacturing of "your product".

* * *

/ / /

21. Policy Form LSC3057 1224 also contains the following Health Hazard exclusion ("Health Hazard Exclusion"):

**LIMITATION – KRATOM**

. . .

**This endorsement modifies insurance provided under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

Solely for the purposes of this endorsement:

**A.** The following exclusions are added to this Policy:

This insurance does not apply to any:

. . .

**7. Health Hazard**

Any actual or alleged emergence, contraction, aggravation, threat, or fear of any form of cancer, neurological disease, organ failure, mental illness, birth defect, or organ failure or disruption in the function of any organ as a result of any use of, consumption of, or exposure to "your product".

This exclusion applies regardless of any fault or intent, particular cause of action, or relief sought, including without limitation economic costs or injunctive relief. This exclusion applies regardless of whether such "claim" or "suit" is brought by or on behalf of any individual or group of individuals who has suffered injury or damage, including a class action regardless of whether such "claim" or "suit" is certified as such. This exclusion includes any "claim" or "suit" brought by or on behalf of any domestic or foreign governmental entity including, without limitation, any state government, federal government, regulatory authority, administrative agency, public foundation, non-profit organization, special interest group, or another similar entity or individual who has not themselves suffered injury or damage.

This exclusion applies whether the "claim" or "suit" arises out of any actual or alleged marketing, distribution, or other

> sales or similar practice including any failure to warn or inadequate warning, defective design of "your product", or interference with a right common to the general public. This includes any allegation of nuisance or any other ground for liability causing or contributing to any "claim" or "suit". This exclusion applies regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence.
>
> If a "claim" is made or a "suit" is filed that includes any allegation that is excluded by this exclusion, this exclusion shall exclude coverage for the entire "claim" or "suit" regardless of whether any portion of the "claim" or "suit" is not excluded or that this insurance would apply in the absence of such excluded allegation.

* * *

## FIRST CLAIM FOR RELIEF

### Declaratory Relief – Duty to Defend

### Application of Kratom Limitation

### (Against All Defendants)

22. Kinsale repeats and incorporates by reference paragraphs 1 through 21 as though fully set forth herein.

23. Pursuant to the Kratom Limitation, the Kinsale Policy expressly excludes coverage for any "claim" or "suit" arising out of, related to, or in any way involving any actual or alleged: (a.) abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any: Kratom derived product or derivative of Kratom; (b.) failure to provide an environment safe from any actual or alleged abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any described substance; or (c.) failure to warn or inadequacy or absence of any warning related to the dangers of the environment that could contribute to or the consequences of any abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any described substance.

/ / /

24. The *Mills* Action arises from Pat Mills' alleged addiction to Kratom and 7-OH. The Underlying Complaint further alleges that Defendants breached duties owed to the decedent, including the duty to ensure Defendants' products contained conspicuous and adequate warnings. It follows that the Kratom Limitation serves as a complete bar to coverage for the *Mills* Action.

25. Kinsale is informed and believes that Defendants dispute whether the Kratom Limitation excludes coverage. Therefore, a justiciable controversy exists between Kinsale on the one hand, and Defendants on the other, such that declaratory relief is appropriate.

26. Kinsale is entitled to and requests this Court to issue a declaration that Kinsale never had a duty to defend Defendants against the *Mills* Action.

27. Upon declaration by the Court that there was never a duty to defend, Kinsale also seeks a declaration that it may cease paying for Defendants' defense in the *Mills* Action and may withdraw from said defense.

**<u>SECOND CLAIM FOR RELIEF</u>**

**Declaratory Relief – Duty to Defend**

**Application of Health Hazard Exclusion**

**(Against Defendants)**

28. Kinsale repeats and incorporates by reference paragraphs 1 through 27 as though fully set forth herein.

29. Pursuant to the Health Hazard Exclusion, the Kinsale Policy expressly excludes from coverage "[a]ny actual or alleged emergence, contraction, aggravation, threat, or fear of any form of … organ failure or disruption in the function of any organ as a result of any use of, consumption of, or exposure to 'your product'." The Kinsale Policy defines "your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You; (b) Others trading under your name; or (c) A person or organization whose business or assets you have acquired; and (2) Containers (other than vehicles),

materials, parts or equipment furnished in connection with such goods or products." "Your product" includes: "(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and (2) The providing of or failure to provide warnings or instructions."

30. The Complaint in the *Mills* Action alleges that the Incident took place after Pat Mills bought and consumed lethal amounts of kratom, including Hyrodxie-brand kratom products. As such, the Health Hazard Exclusion applies. Therefore, Kinsale never had a duty to defend Defendants.

31. Kinsale is informed and believes that Defendants disputes whether the endorsed Health Hazard Exclusion excludes coverage. Therefore, a justiciable controversy exists between Kinsale on the one hand, and Defendants on the other hand, such that declaratory relief is appropriate.

32. Kinsale is entitled to and requests this Court to issue a declaration that Kinsale never had a duty to defend Defendants against the *Mills* Action.

33. Upon a declaration by the Court that there was never a duty to defend, Kinsale also seeks a declaration that it may cease paying for Defendants' defense in the *Mills* Action and may withdraw from said defense.

## <u>THIRD CLAIM FOR RELIEF</u>

**Declaratory Relief – No Duty to Indemnify**

**(Against All Defendants)**

34. Kinsale repeats and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

35. Upon a declaration from the Court that Kinsale never had a duty to defend Defendants against the *Mills* Action under the Kinsale Policy, Kinsale is entitled to a declaration that there is no duty to indemnify any of the Defendants under the Kinsale Policy for any settlement or judgement against any of the Defendants in the *Mills* Action.

/ / /

36. Other terms, conditions, exclusions and endorsements of the Kinsale Policy apply to preclude coverage *in toto* for Defendants' indemnity for the *Mills* Action.

37. Kinsale is informed and believes that Defendants dispute Kinsale's conclusion that Kinsale owes no duty to indemnify based on the terms of the Kinsale Policy. Therefore, a justiciable controversy exists between Kinsale on the one hand, and Defendants on the other hand, such that declaratory relief is appropriate.

38. Based on the foregoing, the Court may issue a declaratory judgment that Kinsale has no duty to indemnify Defendants under the Kinsale Policy for any settlement or judgment against any of the Defendants in the *Mills* Action.

**FOURTH CLAIM FOR RELIEF**

**Declaratory Relief – Reimbursement**

**(Against All Defendants)**

39. Kinsale repeats and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. Upon a declaration by the Court that Kinsale never had a duty to defend Defendants, Kinsale is entitled to recover from Defendants the attorney's fees and costs Kinsale expended to defend Defendants against the *Mills* Action from August 28, 2026 forward.

41. Kinsale has actually incurred substantial attorney's fees and costs defending Defendants against the *Mills* Action. Based on the developments from the *Mills* Action, including the allegations and other information, Kinsale reasonably anticipates incurring in excess of $75,000 in attorney's fees and costs through trial in the *Mills* Action.

42. Kinsale is informed and believes that Defendants dispute that Kinsale is entitled to recover from Defendants the attorney's fees and costs Kinsale expended to defend Defendants against the *Mills* Action. Therefore, a justiciable

controversy exists between Kinsale on the one hand, and Defendants on the other hand, such that declaratory relief is appropriate.

43. Upon a declaration by the Court that Kinsale is entitled to reimbursement of the attorney's fees and costs it incurred to defend Defendants against the *Mills* Action, the Court may declare the amount of such fees and costs that Kinsale is entitled to recover from Defendants.

**FIFTH CLAIM FOR RELIEF**

**Quasi-Contract – Reimbursement**

**(Against Defendants)**

44. Kinsale repeats and incorporates by reference the allegations in Paragraphs 1 through 43 of this Complaint.

45. Prior to the filing of this Complaint, Kinsale incurred and paid substantial amounts to defend Defendants against the *Mills* Action. Kinsale expressly reserved the right to recover those attorney's fees and costs from Defendants. Kinsale never had a duty to defend the *Mills* Action pursuant to the provisions of the Kinsale Policy. As of the date of this Complaint, Kinsale has already incurred substantial attorney's fees and costs defending the *Mills* Action.

46. By virtue of Kinsale's payment of attorney's fees and costs to defend Defendants against the *Mills* Action which it never owed (because Kinsale has no duty to defend the *Mills* Action), Defendants received the benefit of such defense (and the monetary value thereof) to which Defendants were never entitled. Accordingly, to allow Defendants to retain such benefits would be unjust. Kinsale has been damaged by conferring a benefit on Defendants to which it was not entitled under the Kinsale Policy. Kinsale is therefore entitled to recover from Defendants the amount that Kinsale incurred in defense of the *Mills* Action from August 28, 2026 onward.

/ / /

/ / /

WHEREFORE, Plaintiff, Kinsale Insurance Company, prays that this Court enter a judgment in its favor and against Defendants Hydroxie LLC, Timothy Shaw, and Adam Israel, on each and every claim asserted herein as follows:

**On The First Claim for Relief**

A. For a judicial determination against Defendants that Kinsale never had a duty to defend Defendants against the allegations of the *Mills* Action.

B. For a judicial determination that Kinsale may cease payment of attorney's fees and costs to defend Defendants against the *Mills* Action.

C. For a judicial determination that Kinsale may withdraw from the defense of Defendants against the *Mills* Action.

**On The Second Claim for Relief**

D. For a judicial determination against Defendants that Kinsale never had a duty to defend Defendants against the allegations of the *Mills* Action.

E. For a judicial determination that Kinsale may cease payment of attorney's fees and costs to defend Defendants against the *Mills* Action.

F. For a judicial determination that Kinsale may withdraw from the defense of Defendants against the *Mills* Action.

**On The Third Claim for Relief**

G. For a judicial determination against Defendants that Kinsale does not owe any duty to indemnify Defendants under the Kinsale Policy against the *Mills* Action.

**On The Fourth Claim for Relief**

H. For a judicial determination against Defendants that Kinsale is entitled to reimbursement of attorney's fees and costs Kinsale incurred to defend Defendants against the *Mills* Action, as well as the amount of such reimbursement.

**On the Fifth Claim for Relief**

I. Alternatively, on the Fifth Claim for Relief, that Kinsale is entitled to a judgment for money or reimbursement of monies representing the amount that

Kinsale expended to defend Defendants against the *Mills* Action from August 28, 2026 forward, which represents the amounts that Defendants received but to which they were not entitled under the Kinsale Policy.

Dated: September 11, 2026

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By: */s/ Patricia A, Daza-Luu*
Matthew J. Hafey
Patricia A. Daza-Luu
Attorneys for Plaintiff KINSALE INSURANCE COMPANY