# Exhibit B

KINSALE INSURANCE COMPANY
2035 Maywill Street, Suite 100
Richmond, VA 23230

# DECLARATIONS - LIFE SCIENCES GENERAL LIABILITY - CLAIMS MADE

| | |
|---|---|
| **Policy Number:** | **0100370510-0** |
| **Producer Number:** | **12017** |
| **Name and Address:** | **CRC Commercial Solutions - San Francisco, CA (50 California)**<br>**50 California Street, Suite 2000**<br>**San Francisco, CA 94111** |

| | |
|---|---|
| **NAMED INSURED:** | **Hydroxie LLC**<br>**KAVAHH LLC; Ricco Management Company Inc** |
| **MAILING ADDRESS:** | **306 W El Norte Pkwy, Ste N92**<br>**Escondido, CA 92026** |
| **POLICY PERIOD:** | **FROM 05/07/2025 TO 05/07/2026 at 12:01 AM at the address of the named insured as shown above.** |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| **LIMITS OF INSURANCE** | | |
|---|---|---|
| Each Claim Limit | $1,000,000 | Any one occurrence |
| Damage to Premises Rented to You Limit | $100,000 | Any one premises |
| Personal and Advertising Injury Limit | $1,000,000 | Any one person or organization |
| General Aggregate Limit | $2,000,000 | |
| Products-Completed Operations Aggregate Limit | $2,000,000 | |

| **DEDUCTIBLE(S)** | |
|---|---|
| Each Claim Deductible | $25,000 |

**RETROACTIVE DATE**

| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, SHOWN BELOW. | | |
|---|---|---|
| RETROACTIVE DATE (General Liability): | 05/07/2024 | at 12:01AM at the address of the named insured as shown above. |

| **DESCRIPTION OF BUSINESS** | |
|---|---|
| DESCRIPTION OF OPERATIONS: | **Distributor of kratom and kava products** |
| BUSINESS TYPE: | Limited Liability Co |

| **ALL PREMISES YOU OWN, RENT OR OCCUPY (if different than the mailing address)** | |
|---|---|
| LOCATION | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 1 | 295 Trade St, San Marcos, CA 92078 |
| 2 | 1277 Simpson Way, Escondido, CA 92029 |
| 3 | 1265 Simpson Way, Escondido, CA 92029 |

| **CLASSIFICATION AND PREMIUM** | | | | | |
|---|---|---|---|---|---|
| CLASS CODE | CLASS DESCRIPTION | BASIS OF PREMIUM | EXPOSURE | RATE | PREMIUM |
| 80248.09 | Kratom | REDACTED | | | |

| | |
|---|---|
| TOTAL PREMIUM (DEPOSIT PREMIUM): | REDACTED |
| COMPANY FEE: | |
| **TOTAL PAYABLE AT INCEPTION:** | |

| | | | |
|---|---|---|---|
| POLICY SUBJECT TO AUDIT: | Y | AUDIT PERIOD: | Annual |

| **FORMS AND ENDORSEMENTS** |
|---|
| Refer to ADF4001, SCHEDULE OF FORMS |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

# NOTICE - WHERE TO REPORT A CLAIM

It is important that losses, claims, or incidents (if incident reporting is permitted under the Policy) are reported in writing and directly to the Claims Department at Kinsale Insurance Company. Reporting losses, claims, or incidents to an insurance agent or broker is not notice to the Kinsale Insurance Company Claims Department. Failure to report directly to Kinsale Insurance Company's Claims Department may jeopardize coverage under the Policy. The Claims Department can be contacted easily and quickly by e-mail, online, fax, or U.S. mail.

**By E-mail:**
Newclaimnotices@kinsaleins.com

**Online:**
https://claims.kinsaleins.com

**By FAX:**
1-804-482-2762, Attention Claims Department

or

**By Mail:**
Claims Department
Kinsale Insurance Company
P. O. Box 17008
Richmond, Virginia 23226

**Street Address:**
Claims Department
Kinsale Insurance Company
2035 Maywill Street, Suite 100
Richmond, Virginia 23230

# SCHEDULE OF FORMS

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

LSC1002-0521 - Declarations - Life Sciences General Liability - Claims Made
ADF9013-0524 - Notice - Where to Report a Claim
ADF4001-0110 - Schedule of Forms
LSC0001-0524 - Life Sciences General Liability Coverage Form - Claims Made
ADF2000-0622 - Policy Amendment - Extrinsic Evidence
ADF2002-0225 - Amended Condition - Premium Audit
LSC2023-1019 - Retroactive Dates - "Your Product"
LSC2030-0219 - Claims Made and Reported Endorsement (General Liability)
LSC2043-0920 - Amendment of Coverage Territory- Worldwide Coverage
LSC4001-0921 - Life Sciences - Composite Rate Endorsement
LSC4008-0217 - Waiver of Transfer of Rights of Recovery Against Vendors to Us
LSC4014-1121 - Additional Policy Provisions - Premium
ADF3011-0115 - Exclusion of Other Acts of Terrorism Committed Outside the United States; Exclusion of Punitive Damages Related to a Certified Act of Terrorism; Cap on Losses from Certified Acts of Terrorism
ADF3017-0622 - Exclusion - Biometric Information Privacy Laws
LSC3001-1119 - Additional Exclusions- Life Sciences
LSC3003-0217 - Exclusion - Ingredients or Additives
LSC3004-0110 - Exception to Ingredients or Additives Exclusion
LSC3009-0713 - Exclusion - Transmissible Spongiform Encephalopathy (TSE)
LSC3019-0815 - Exclusion - Business Conduct
LSC3024-0524 - Exclusion - Pathogen and Related Hazards
LSC3038-0322 - Absolute Exclusion - Perfluoroalkyl And Polyfluoroalkyl Substances (PFAS)
LSC3057-1224 - Limitation - Kratom
LSC5005-0922 - Additional Insured As Required By Written Contract - Vendors (Blanket)
LSC5006-0822 - Additional Insured As Required By Written Contract - Trade Event - Primary And Non-Contributory
LSC5012-0922 - Additional Insured As Required By Written Contract - Vendors (Blanket) - Primary And Non-Contributory
LSC5014-0822 - Additional Insured As Required By Written Contract - Managers Or Lessors Of Premises
ADF9010-0321 - Notice of Terrorism Insurance Coverage
IL0985-1220 - Disclosure Pursuant to Terrorism Risk Insurance Act
ADF9004-0110 - Signature Endorsement
ADF9009-0110 - U.S. Treasury Department's Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders

# LIFE SCIENCES GENERAL LIABILITY COVERAGE FORM – CLAIMS MADE

THIS IS A CLAIMS MADE POLICY. THE COVERAGE REQUIRES THAT A CLAIM BE FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD OR AN EXTENDED REPORTING PERIOD, IF APPLICABLE. THE LIMIT OF INSURANCE WILL BE REDUCED BY PAYMENT OF DAMAGES AND SUPPLEMENTARY PAYMENTS. PLEASE READ THE ENTIRE POLICY CAREFULLY.

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the "named insured" shown in the Declarations, and any other person or organization qualifying as a "named insured" under this Policy. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VII – DEFINITIONS**.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the "insured" against any "suit" seeking those "damages". However, we will have no duty to defend the "insured" against any "suit" seeking "damages" for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for "damages" is limited as described in Section **III** – **LIMITS OF INSURANCE AND DEDUCTIBLE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or Supplementary Payments under Coverages **A** or **B.** In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" did not occur before the "retroactive date", if any, shown in the Declarations or after the end of the "policy period"; and

**(3)** A "claim" for "damages" because of the "bodily injury" or "property damage" is first made against any "insured", in accordance with Paragraph **c.** below, during the "policy period" or any Extended Reporting Period we provide under Section **VI** – Extended Reporting Period.

**c.** All "claims" for "damages" because of "bodily injury" to the same person, including "damages" claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those "claims" is made against any "insured".

All "claims" for "damages" because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**d.** For the purposes of this insurance, all "bodily injury" or "property damage" logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision will be deemed to have first taken place at the time the first of such "bodily injury" or "property damage" took place. All such "bodily injury" or "property damage" will be deemed to be the same "bodily injury" or "property damage" even though the nature and extent of any resulting injury or damage may change and even though the resulting injury or damage may be continuous, progressive, cumulative, changing or evolving, and even though the resulting injury or damage may be or may involve a continuous or repeated exposure to substantially the same general harm.

**e.** Where there is no coverage under this Policy, there is no duty to defend.

**2. Exclusions Applicable to Coverage A**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to:

**(1)** "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

**(2)** "Bodily injury" or "property damage" which can be expected to result from reasonable use of "your product", including "bodily injury" or "property damage" from a known side effect or known adverse reaction.

**b. Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of any "insured" arising out of and in the course of:

**(a)** Employment by any "insured"; or

**(b)** Performing duties related to the conduct of any "insured's" business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether an "insured" may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury and to liability assumed under any contract or agreement.

The word "employee" as used in this exclusion includes any member, associate, "leased worker" leased to any "insured", contract worker, casual worker, "temporary worker" furnished to any "insured", or any persons loaned to or volunteering services to any "insured".

**d. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any "insured". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any "insured".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;
**(2)** A watercraft you do not own that is:
  **(a)** Less than 50 feet long; and
  **(b)** Not being used to carry persons or property for a charge;
**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the "insured";
**(4)** "Bodily injury" or "property damage" arising out of:
  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
  **(b)** The operation of any of the machinery or equipment listed in Paragraph **f. (2)** or **f. (3)** of the definition of "mobile equipment".

**e. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any "insured"; or
**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**f. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
**(2)** Premises you sell give away or abandon, if the "property damage" arises out of any part of those premises;
**(3)** Property loaned to you;
**(4)** Personal property in the care, custody or control of the "insured";
**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
**(6)** That particular part of any property that must be restored repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented to You as described in **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**g. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**h. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**i. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**j. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**k. Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**l. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **b.** through **j.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the "insured" against any "suit" seeking those "damages". However, we will have no duty to defend the "insured" against any "suit" seeking "damages" for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for "damages" is limited as described in **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or Supplementary Payments under Coverages **A** or **B.** In such case, we shall have the right to withdraw from further defense, payment or settlement of any "claim" by tendering control of such "claim" to you. You agree to accept such tender as a condition of this Policy.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:

**(1)** The offense was committed in the "coverage territory";

**(2)** The offense was not committed before the "retroactive date", if any, shown in the Declarations or after the end of the "policy period"; and

**(3)** A "claim" for "damages" because of the "personal and advertising injury" is first made against any "insured", in accordance with Paragraph **c.** below, during the "policy period" or any Extended Reporting Period we provide under Section **VI** – Extended Reporting Periods.

**c.** All "claims" for "damages" because of "personal and advertising injury" to the same person or organization as a result of an offense will be deemed to have been made at the time the first of those "claims" is made against any "insured".

**d.** For the purposes of this insurance, all offenses logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision will be deemed to have first taken place at the time the first of such offenses took place. All such offenses will be deemed to be the same offense even though the nature and extent of any resulting injury may change and even though the resulting injury may be continuous, progressive, cumulative, changing or evolving, and even though the resulting injury may be or may involve a continuous or repeated exposure to substantially the same general harm.

**e.** Where there is no coverage under this Policy, there is no duty to defend.

**2. Exclusions applicable to Coverage B**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Retroactive Date**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the Retroactive Date shown in the Declarations.

**d. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**e. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**f. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**g. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;
**(2)** Designing or determining content of web-sites for others; or
**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**h. Electronic Chat Rooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the "insured" hosts, owns, or over which the "insured" exercises control.

**i. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**j. Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**ADDITIONAL EXCLUSIONS – COVERAGES A AND B** (the following exclusions apply to both **BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **PERSONAL AND ADVERTISING INJURY LIABILITY)**

This insurance does not apply to:

**a. Prior Or Known Claims**

Any prior or known claims:

**(1)** Disclosed in the application for this Policy;
**(2)** Disclosed to any other insurance company or other source from which payment might be made prior to the effective date of the "policy period" of the first policy issued by us;
**(3)** Based on, arising out of or resulting from:
  **a.** An "occurrence" or offense, any portion of which took place prior to the "retroactive date" specified for the "named insured";
  **b.** Any act, omission or circumstance that could reasonably have been foreseen to give rise to a "claim" prior to the effective date of the "policy period" of the first policy in a series of continuous policies issued by us; or
  **c.** Proceedings that were initiated against any "insured" prior to the effective date of the "policy period" of the first policy in a series of continuous policies issued by us.

**b. Criminal Acts**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any criminal act, including but not limited to abuse, molestation or fraud, committed by or at the direction of the "insured".

**c. Dishonest, Fraudulent Or Malicious Acts**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any dishonest, fraudulent or malicious act, including reckless violation of any statute, or any act deemed uninsurable by law, committed by or at the direction of any "insured".

**d. Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" that results from the performance of or failure to perform professional services.

**e. Fee Dispute**

Any commingling, conversion, embezzlement or misappropriation of, inability or failure to pay, collect or return, any money or fees for services.

**f. Laws**

Violation of any laws including:

**(1)** Any workers' compensation, disability benefits or unemployment compensation law, social security or similar law;
**(2)** Employee Retirement Income Security Act of 1974 (ERISA) including any fiduciary liability or liability due to the administration of any employee benefit plan; the Fair Labor Standards Act; the National Labor Relations Reconciliation Act of 1938; the Consolidated Omnibus Budget Reconciliation Act of 1985; or the Occupational Safety and Health Act;
**(3)** Any Medicare or Medicaid regulations;
**(4)** Any Health Insurance Portability and Accountability Act (HIPAA) or Americans with Disabilities Act (ADA)rules, regulations or laws; or

**(5)** Any rules or regulations promulgated under any of the foregoing, amendments thereto, or any similar provisions of any federal, state or local laws.

**g. Distribution Of Material In Violation Of Statutes**

Violation of The Telephone Consumer Protection Act (TCPA), The CAN-SPAM Act of 2003, the Fair Credit Reporting Act (FCRA), the Fair and Accurate Credit Transaction Act (FACTA) and any amendments to such law; and including violation of any other statute, ordinance or regulation that limits or prohibits the printing, dissemination, disposal, collecting, recording, transmitting, communicating, sending or distribution of any material or information.

**h. Abuse Or Molestation**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(1)** Any conduct, physical act, gesture, sexual contact (whether or not consensual), sexual molestation, sexual or physical assault or battery, sexual abuse, sexual harassment or exploitation, harmful, unwanted or offensive contact or spoken or written words of a sexual or physically violent nature whether provoked or unprovoked;
**(2)** The "insured's" actual or alleged negligent employment, investigation, supervision, hiring, training or retention of any "employee", "insured" or person for whom the "insured" is legally responsible and whose conduct falls within paragraph **(1)** above; or
**(3)** The failure to provide an environment safe from or warn of the dangers of, or prevent or fail to report to the proper authorities, any conduct described in paragraph **(1)** above.

**i. Contractual Liability**

"Bodily injury", "property damage" or "personal and advertising injury" for which the "insured" is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages":

**(1)** That the "insured" would have in the absence of the contract or agreement; or
**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**j. Communicable Disease**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving any form of communicable disease, including any form of inhalation of, absorption of or contact with communicable disease. This exclusion includes but is not limited to:

**(1)** Any sexually transmitted disease;
**(2)** Acquired Immunodeficiency Syndrome or Human Immunodeficiency Virus, or exposure to another having the same, or to substances or materials contaminated with the same, or fear of contracting Acquired Immunodeficiency Syndrome, Human Immunodeficiency Virus or any other communicable disease;
**(3)** The failure to provide an environment safe from or the failure to warn of the dangers of communicable diseases or their transmission to others;
**(4)** The prevention or suppression, or the failure to prevent or suppress communicable diseases or their transmission to others;
**(5)** The reporting or failure to report to the proper authorities; or
**(6)** The negligent hiring, employment, training, supervision, or retention of any "insured", "employee", agent or other person with respect to items **(1)** through **(5)** above.

**k. Fungi And Bacteria**

"Bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from:

 Includes Material © ISO Properties, Inc., 2003 

**(1)** Actual, alleged or threatened exposure to, consumption of, ingestion of, inhalation of, absorption of, existence of or presence of "fungi or bacteria" in any manner or form whatsoever;

**(2)** The actual or alleged failure to warn, advise or instruct related to "fungi or bacteria" in any manner or form whatsoever;

**(3)** The actual or alleged failure to prevent exposure to "fungi or bacteria" in any manner or form whatsoever; or

**(4)** The actual or alleged presence of "fungi or bacteria" in any manner or form whatsoever, in any place whatsoever, whether or not within a facility owned or used by the "named insured", including the contents of such facility.

This exclusion includes, but is not limited to, compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any other "claim", demand, loss, cost, or expense arising out of, relating to or resulting from the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi or bacteria", as well as any loss, costs, fees, expenses, penalties, judgments, fines, or sanctions arising out of, relating thereto or resulting from "fungi or bacteria".

This exclusion does not apply to any "fungi or bacteria" that are, are on, or are contained in, a good or product intended for bodily consumption. However, this exception does not apply to water droplets originating from such good or product, except where inhalation of such droplets is an intended use of such good or product.

As used in this exclusion, "fungi or bacteria" include, without limitation, mold, mildew, yeast, spores, mycotoxins, endotoxins, or other pathogens, as well as any particulates or byproducts of any of the foregoing, either directly or indirectly.

**l. Insured Vs. Insured**

Any "claim" or "suit" for "bodily injury", "property damage" or "personal and advertising injury" brought by one "insured" against any other "insured".

**m. Other Coverage Form**

"Bodily injury", "property damage" or "personal and advertising injury" which is also covered under any insuring agreement of any other Coverage Form attached to this Policy.

**n. Lead, Asbestos, Silica**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving asbestos, lead or silica, including any claim or suit for expenses or any obligations to share damages with or repay anyone else who must pay damages from asbestos, lead or silica. With respect to silica, this exclusion does not apply to injury or damages caused by "your products" that are in compliance with Title 21 Code of Federal Regulations, Part 172, Subpart E, or to materials that are used as packaging of "your products".

This exclusion applies to:

**(1)** Any "bodily injury", "property damage" or "personal and advertising injury" of any type arising out of the inhalation, ingestion, exposure to, degradation of, absorption of, or toxic substance from asbestos, lead or silica in any form or from any goods, products or structures containing same; or

**(2)** The existence of or degradation of asbestos, lead or silica in any form in occupancy or construction or the manufacture, sale, transportation, handling, storage, disposal, or removal of same or goods or products containing asbestos, lead or silica.

**o. Discrimination**

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving discrimination of any kind, whether actual or alleged, nor to any expenses or obligation to share damages with or repay another who must pay damages from discrimination.

**p. Employment Practices**

Liability for employment-related practices, regardless of allegations, nor to any expenses nor to any obligation to share damages with or repay anyone else who must pay damages from same including but not limited to:

**(1)** Refusal to employ or termination of employment;
**(2)** Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions; or
**(3)** Consequential "bodily injury" or "personal and advertising injury" as a result of **(1)** or **(2)** above.

**q. Nuclear, Biological or Chemical Materials**

Any "claim" or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of or relating to any activity by an individual acting alone, or individuals acting as part of a group, that involves any violent act, including the threat of any activity or preparation for an activity that involves the use, release, dispersal, discharge, escape or application of:

**(1)** Nuclear materials, or directly results in nuclear reaction or radiation or radioactive contamination; or
**(2)** Pathogenic or poisonous biological or chemical materials.

**r. War**

Any "claim" or "suit" for "bodily injury", "property damage" or "personal and advertising injury" or other injury or damage, arising directly or indirectly out of, related to, or, in any way involving:

**(1)** Hostile or warlike action in time of peace or war, including any action in hindering, combating or defending against an actual impending or expected attack by:
  **a.** Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces;
  **b.** Military or naval or air forces, or
  **c.** An agent of a. or b. above, it being understood that any discharge, explosion or use of any weapon of war employing nuclear fission or fusion, or biological, chemical or radiological discharge shall be conclusively presumed to be such hostile or warlike action by such a government, power, authority or forces.
**(2)** Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating or defending against such an event.

**s. Classification Limitation**

Locations and operations that are not described on the Declarations page(s) of this Policy or in an endorsement to this Policy. If any location(s) and or operation(s) are not described, they are not covered.

**t. FDA Limitation**

Any "claim" or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of products manufactured, sold, handled, or distributed by you or by others trading under your name:

**(1)** And which are subject to approval by, but prior to sale or distribution have not yet been approved by the U.S. Food and Drug Administration (FDA); or
**(2)** The use of which is contrary to or is not approved by the U.S. Food and Drug Administration (FDA) regulations.

 Includes Material © ISO Properties, Inc., 2003 

However, this exclusion does not apply to "your products" which are manufactured solely for use in U.S. Food and Drug Administration approved "human clinical trials" to which this insurance applies.

"Human clinical trials" means any study conducted on human subjects to discover or verify clinical data, including the testing of "material" upon or within human subjects to establish the effectiveness of, safety of or to provide clinical data for the assessment of such "material".

"Material" means articles or substances intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease, including without limitation, drugs, biologics, vaccines, tissues, genetic materials, devices and therapies, cellular therapies, blood and blood products and allergenics.

**u. Absolute Pollution and Pollution Related Liability**

Any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" or any other injury, damage, or legal liability of any kind, arising directly or indirectly out of, related to, including, or in any way involving the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape of, placement of, or presence of any "pollutant", however caused, including, but not limited to:

**(1)** Any loss, cost, expense, fine, or penalty arising out of any (i) request, demand, order, governmental authority or directive, or that of any private party or citizen action, that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of any "pollutant;" or (ii) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape of, placement of, or presence of any "pollutant" into or upon any land, premises, building, the atmosphere, any water course, body of water, aquifer, or ground water, whether sudden, accidental, or gradual in nature or not, and regardless of when.

**(2)** The devaluation of property, or for taking, use, or acquisition, or interference with the rights of others in or on property or air space, or any other type of injury or expense.

This exclusion applies regardless of fault or intent, regardless of the particular cause of action or theory of liability, regardless of whether any "pollutant" is the initial precipitating cause or is in any way a cause in the chain of events, and regardless of whether any other actual or alleged cause other than a "pollutant" contributed concurrently, proximately, or in any other sequence to the "bodily injury", "property damage", "personal and advertising injury", or any other injury, damage, or legal liability.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any "claim" we investigate or settle or any "suit" against an "insured" we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the "insured" in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will reduce the limits of insurance.

**2.** If we defend an "insured" against a "suit" and an indemnitee of the "insured" is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks "damages" for which the "insured" has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the "insured";

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the "insured" in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the "insured" and the interests of the indemnitee;

**e.** The indemnitee and the "insured" ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the "insured" and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you are an "insured", but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an "insured". Your members, your partners, and their spouses are also "insureds", but only with respect to the conduct of your business.

**c.** A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders.

**e.** A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees.

**2.** Each of the following is also an "insured":

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are "insureds" for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1) (a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Form.

No person or organization is an "insured" with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a "named insured" in the Declarations.

**SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** "Insureds";

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** "Damages" under Coverage **A,** except "damages" because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**b.** "Damages" under Coverage **B;** and

**c.** Supplementary Payments.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for "damages" and Supplementary Payments because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "damages" and Supplementary Payments because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Claim Limit is the most we will pay for the sum of:

**a.** "Damages" under Coverage **A;** and

**b.** Supplementary Payments

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for "damages" because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

The Limits of Insurance of this Coverage Form apply separately to each "policy period" and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

All "claims" based upon logically or causally connected injury or damage or offenses shall be deemed to constitute a single "claim" and be subject to a single Each Claim Limit of Insurance.

Stacking of the Limits of Insurance of any one Coverage Form of this Policy with the Limits of Insurance of any other Coverage Form of this Policy is not permitted.

**7.** Deductible

We shall only be liable for those amounts payable as "damages" and Supplementary Payments incurred in the defense of a "claim" or "suit" which are in excess of the applicable deductible stated in the Declarations.

**a.** We shall have no obligation to make payments within the deductible and then seek reimbursement from the "insured". However, we may at our discretion pay any part or all of the deductible amount to effect the settlement of a "claim" or "suit" and, upon notification of the action taken, you shall reimburse us within thirty (30) days of the notification for such part of the deductible amount as has been paid by us.

**b.** The deductible amount reduces the Limit of Insurance payable under this Policy.

**c.** The deductible amount applies to "damages" and Supplementary Payments and shall be applicable to each "claim".

**SECTION IV – GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or of the "insured's" estate will not relieve us of our obligations under this Coverage Form.

**2. Duties In The Event Of Claim Or Suit**

**a.** If a "claim" is received by any "insured", you must:

**(1)** Immediately record the specifics of the "claim" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" as soon as practicable. Notice to us of an "occurrence" or offense is not notice of a "claim".

**b.** You and any other involved "insured" must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or a "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

**c.** No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Policy unless there has been full compliance with all of the terms of this Policy. No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless it is commenced within twelve (12) months next after discovery by the "insured" of the occurrence which gives rise to the claim, provided however, that if by the laws of the state within which this Policy is issued, such limitation is invalid then any such claims shall be void unless such action, suit or proceeding is commenced within the shortest limit of time permitted by the laws of such state. We will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance.

**4. Other Insurance**

If other valid and collectible insurance is available to the "insured" for a loss we cover, this insurance is excess over any other valid insurance, whether such insurance is considered contributory, excess, primary or otherwise, unless such insurance specifically applies in excess of this Policy.

When this insurance is excess, we will have no duty to defend the "insured" against any "suit" if any other insurer has a duty to defend the "insured" against that "suit".

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Form in accordance with our rules and rates.

**b.** Premium for this Policy, shown on the Declarations page, is a deposit premium only and will be credited toward the final earned premium calculated by premium audit and due at the end of the "policy period".

**(1)** At the close of each audit period, or any part thereof, terminating at the end of the "policy period" or upon cancellation, if applicable, we may conduct an audit of your books and records to determine the actual earned premium for the "policy period". Such premium amount will be calculated in accordance with the Basis of Premium shown on the Declarations page of this Policy.

**(2)** If the total earned premium calculated for that period is greater than the TOTAL PREMIUM (DEPOSIT PREMIUM) paid, as indicated on the Declarations page, the additional premium owed based upon such premium audit calculation is due upon notice to the first "named insured".

**(3)** If the total earned premium calculated for that period is less than the TOTAL PREMIUM (DEPOSIT PREMIUM) paid, as indicated on the Declarations page, we will retain no less than the Minimum and Deposit Premium, as described in Paragraph 1. of the Additional Policy Provisions - Premium endorsement attached to this Policy.

**c.** The first "named insured" must keep records of the information we need for premium computation and send us copies at such times as we may request. Failure to provide such records upon request will be deemed a breach of Policy Conditions, which may subject this Policy, as well as any other policies issued to you, to cancellation. We have the right, but not the obligation to conduct an audit of records needed for premium computation after the expiration of this Policy. Audits may be conducted physically, remotely or by any other means we may choose.

**d.** We will make no less than two attempts to contact you directly to conduct an audit and at least one attempt to contact your agent or broker of record for assistance should direct contact efforts fail. These attempts will occur over a span of no less than two calendar weeks. Any refusal or failure by you: a) to maintain or provide needed records or b) to allow us to conduct an audit of needed records will result in:

**(1)** Our developing and calculating a final audit premium based on information available to us and without your cooperation and assistance; or

**(2)** The assessment of an Audit Noncompliance Charge, as described in Paragraph **e.** below.

If final premium audits calculated without your cooperation and assistance result in additional premium owed to us, you are obligated and agree to pay such additional premium.

You may dispute such final premium audit results or the assessment of an Audit Noncompliance Charge, but only if you provide notice and explanation of your dispute to us, in writing, and your written notice includes verifiable documentation that supports your dispute and allows for premium computation.

Refusal or failure to provide written notice of your dispute along with verifiable documentation supporting your dispute and allowing for premium computation will indicate to us your agreement with the audit results.

**e.** If you refuse or fail to: a) maintain or provide needed records or b) allow us to conduct an audit of needed records, a 25% Audit Noncompliance Charge Factor will be applied to the EXPOSURE(S) shown on the Declarations page, or in any endorsement, of this Policy at the time of expiration. Any assessed audit noncompliance charge will be due to us by the date shown on the bill for such premium.

**(1)** EXAMPLES OF APPLICATION OF AUDIT NONCOMPLIANCE CHARGE: The following illustrates how the Audit Noncompliance Charge Factor is applied under your Policy. These examples assume that our audit attempts were unsuccessful resulting in application of the Audit Noncompliance Charge Factor outlined above:

**EXAMPLE A – 25% Audit Noncompliance Charge Factor**

| | |
|---|---|
| Rated Premium* | $3,900 |
| Minimum Premium Assessed | $10,000 |
| Deposit Premium paid | $10,000 |
| $3,900 x 1 (25%) = $975 Audit Noncompliance Charge | |
| $3,900 + $975 = $4,875 | |
| (Rated Premium + Audit Noncompliance Charge) – Deposit Premium = | |
| No assessed audit noncompliance charge due | |

**EXAMPLE B – 25% Audit Noncompliance Charge Factor**

| | |
|---|---|
| Rated Premium* | $6,960 |
| Minimum Premium Assessed | $7,500 |
| Deposit Premium paid | $7,500 |
| $6,960 x 1 (25%) = $1,740 Audit Noncompliance Charge | |
| $6,960 + $1,740 = $8,700 | |
| (Rated Premium + Audit Noncompliance Charge) – Deposit Premium = | |
| Assessed audit noncompliance charge due in the amount of $1,200 | |

**EXAMPLE C – 25% Audit Noncompliance Charge Factor**

| | |
|---|---|
| Rated Premium* | $13,700 |
| Minimum Premium Assessed | $5,000 |
| Deposit Premium paid | $13,700 |
| $13,700 x 1 (25%) = $3,425 | |
| $13,700 + $3,425 = $17,125 | |
| (Rated Premium + Audit Noncompliance Charge) – Deposit Premium = | |
| Assessed audit noncompliance charge due in the amount of $3,425 | |

**(2)** Please note that, regardless of whether any additional premium is owed as a result of the application of the Audit Noncompliance Charge, you may still be subject to cancellation on subsequent policies as a result of the noncompliance with and breach of Policy Conditions.

*Rated Premium is found by dividing the EXPOSURE by the BASIS OF PREMIUM then multiplying by the RATE and is listed as PREMIUM in the CLASSIFICATION AND PREMIUM Section of the Declarations Page of this Policy.

**6. Representations**

By accepting this Policy, you agree that:

**a.** The application, and all other information and statements provided to us are true, accurate and complete and that the application and all such information and statements are made part of this Policy;

**b.** The application, and all other information and statements provided to us are representations and warranties made to us on behalf of all "insureds";

**c.** This Policy has been issued in reliance upon the truth and accuracy of those representations and warranties; and

**d.** Concealment, misrepresentation or fraud in the procurement of this Policy which, if known by us, would have led us to refuse to enter into this contract at its current terms, conditions or pricing, or to provide coverage for a "claim" hereunder, will be deemed material and this Policy shall be void. In such an event, the Company shall have no obligation to return any portion of the premium.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Form to the first "named insured", this insurance applies:

**a.** As if each "named insured" were the only "named insured"; and

**b.** Separately to each "insured" against whom "claim" is made or "suit" is brought.

If the particular provision in this Coverage Form or any endorsement attached to this Coverage Form uses the words "any 'insured'" or "an 'insured'", however, this provision will not apply.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Policy has rights to recover damages from another, those rights are transferred to us. That person or organization must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

**9. Cancellation**

**a.** The first "named insured" shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

 Includes Material © ISO Properties, Inc., 2003 

**b.** We may cancel this Policy by mailing or delivering to the first "named insured" written notice of cancellation at least:

**(1)** Ten (10) days before the effective date of cancellation if we cancel for non-payment of premium; or

**(2)** Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

**c.** We will mail or deliver our notice to the first "named insured's" last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**d.** Notice of cancellation will state the effective date of cancellation. The "policy period" will end on that date.

**e.** If this Policy is cancelled, we will send the first "named insured" any refund due subject to the minimum earned premium provisions of the Policy. If we cancel for reasons other than non-payment of premium, the refund will be pro rata. If we cancel due to non-payment of premium or if the first "named insured" cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**10. Policy Renewal**

Disclosure of a "claim" or potential "claim" on a renewal submission, application or claim information supplement submitted to us shall not be notice of a "claim." The "insured" must follow reporting requirements set forth in the Policy in order to provide notice of a "claim".

**11. Non-Renewal**

**a.** If we elect not to renew this Policy we shall mail written notice to the first "named insured" at the address shown in the declarations. Such written notice of non-renewal shall be mailed at least thirty (30) days prior to the end of the "policy period".

**b.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**12. Service Of Suit And Jurisdiction**

In the event of the failure of the Company to pay any amount claimed to be due under this Policy, the Company will submit to the jurisdiction of any United States federal court of competent jurisdiction within the United States of America or any court of competent jurisdiction in Canada. In the event there is no United States federal court of competent jurisdiction, the Company will submit to the jurisdiction of any other court of competent jurisdiction within the United States of America. All matters arising under this Policy shall be determined in accordance with the choice of law rules of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in any such suit may be made upon the President and Chief Executive Officer of the Company or his designee at the address shown on the Declarations of this Policy. In any suit instituted upon this contract and against the President and Chief Executive Officer of the Company or his designee, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal. The President and Chief Executive Officer of the Company or his designee are authorized and directed to accept service of process.

Pursuant to any statute of any state, territory or district of the United States of America, the Company designates the Superintendent, Commissioner or Director of Insurance or other officer specified for the purpose in the statute, or his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary under this Policy arising out of this contract of insurance. The Company designates the above-named as the person to whom said officer is authorized to mail such process or a true copy of such process.

To the extent this Service of Suit and Jurisdiction provision conflicts with applicable state law, it is hereby amended to comply with said law but only to the extent necessary to bring it within the applicable law.

**13. Deterrence of Loss**

In the event of an "occurrence" or a "claim" involving the operations, premises, goods or products covered by this insurance, the "insured" shall promptly, at the "insured's" expense, take any and all reasonable steps to prevent additional "bodily injury", "property damage" or "personal and advertising injury" arising out of the same or similar circumstances.

**14. Material Changes in Operations, Products or Premises**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first "named insured" shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

The "insured" shall report promptly to us any material changes, as described below, in operations, products or premises and we reserve the right to adjust the premium and/or Deductible based upon the material changes from the time the Policy was originally underwritten. You agree to report the following:

**a.** Any material changes in operations which are not currently included in the Description of Operations on the Declarations.

**b.** Any material changes in manufacturing or servicing operations which will result in a twenty-five percent (25%) or more annual increase in gross revenues and/or payrolls.

**c.** Any material changes in premises requiring structural alterations, or acquisition of additional premises, locations or operations.

**15. Newly Acquired Entities**

To request coverage for newly acquired entities, you must report any entity you acquire after the inception date of this Policy to us and request coverage for such entity. Coverage will apply only if we agree to provide such coverage by issuing an endorsement to the Policy.

**16. Binding Arbitration**

All disputes under this Policy shall be subject to binding arbitration as follows:

**a.** All disputes over coverage or any rights afforded under this Policy, including whether an entity or person is a "named insured", an "insured", an additional insured, or entitled to coverage under the Supplementary Payments provisions of this Policy or the effect of any applicable statutes or common law upon the contractual obligations owed, shall be submitted to binding arbitration, which shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

The arbitration forum and process shall be agreed to by the parties. In the event the parties cannot agree on an arbitration forum and process, the matter shall be submitted to the American Arbitration Association. The arbitration shall be before a panel of three arbitrators, unless the parties agree to one arbitrator, all of whom shall have experience in insurance coverage of the type afforded by this Policy. If the parties select a panel of three arbitrators, each party shall select an arbitrator and the chosen arbitrators shall select a third arbitrator. The American Arbitration Association shall decide any disputes concerning the selection of the arbitrators. The potential arbitrators from which the arbitrators shall be selected shall not be confined to those provided by the American Arbitration Association. Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and arbitration process. In the event of a single arbitrator, the cost shall be shared equally by the parties. The decision of the arbitration is final and binding on the parties.

**b.** All disputes regarding payment(s) owed under this Policy for any deductible or premium, including but not limited to any audit premium, shall be settled by binding arbitration administered by the American Arbitration Association in accordance with the AAA Expedited Procedures. This arbitration shall be the sole and exclusive means to resolve the dispute. Either party may initiate the binding arbitration.

Each party will provide relevant documents in support of its position. In order to eliminate undue burden and expense, there shall be no other discovery allowed. The arbitration will be based solely on the documents submitted by the parties and there shall be no in-person or oral hearing. The disputes shall be decided by a single arbitrator. The arbitrator's decision shall be accompanied by a reasoned opinion and shall be binding upon all parties. Any judgment or award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such judgment or award. Each party shall bear its own costs and expenses and an equal share of the arbitrator's fee and any administrative fees associated with the arbitration.

Except as may be required by law, neither a party nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

**17. Fraudulent Acts**

If any "insured" commits fraud in connection with any "claim" submitted to the Company, this insurance shall become void from the date such fraudulent "claim" is submitted. In such event, the Company shall have no obligation to return any portion of the premium.

**18. Assignment Of Interest Limitation**

Assignment of interest by you under this Policy shall not bind us unless we agree and endorse the assignment onto this Policy.

**SECTION V—CLAIM REPORTING PROVISION**

The "insured" shall give to the Company written notice in accordance with the Duties in the Event of Claim or Suit Condition, of any "claim" first made against the "insured" during the "policy period" or the Extended Reporting Period, if applicable.

**SECTION VI—OPTIONAL EXTENDED REPORTING PERIOD**

If this Policy is cancelled or non-renewed for reasons other than non-payment of premium or non-payment of deductible, non-compliance with the Policy's terms and conditions, or for misrepresentation or fraud; or we renew or replace this Coverage Form with insurance that has a "retroactive date" later than the date shown in the Declarations of this Coverage Form; or that does not apply to "bodily injury", "property damage" or "personal and advertising injury" on a claims-made basis; then you shall have the right to purchase an Extended Reporting Period endorsement subject to all the terms and conditions of this Policy and as described below:

**1.** The "named insured" shall have the right to purchase an Extended Reporting Period during which you may report to us a "claim" that is first made against any "insured" during the "policy period" or such Extended Reporting Period and that results from "bodily injury" or "property damage" that takes place or "personal and advertising injury" caused by an offense committed, subsequent to the Policy "retroactive date" and before the end of this "policy period" and to which this Policy applies.

**2.** The Extended Reporting Period is provided by endorsement for an additional premium computed as a percentage of the combined sum of the Policy premium and any premium adjustments by endorsement, not including a cancellation endorsement if applicable. The premium for the Extended Reporting Period is deemed fully earned and is non-refundable the first day the Extended Reporting Period is effective.

**3.** Once in effect, the Extended Reporting Period may not be cancelled by you or us.

**4.** You must provide us a written request for the Extended Reporting Period endorsement and pay any premium due within thirty (30) days after the end of the "policy period". The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

Any change to this Policy's premiums, limits or terms, or to the premium, limits or terms of a renewal policy do not constitute a refusal to renew.

The Limit of Insurance for "claims" made during the Extended Reporting Period is considered part of, and is not in addition to, the Limit of Insurance referenced in **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**. The fact that the period during which "claims" may be first made and reported to us under this Policy is extended by activation of the Extended Reporting Period does not in any way increase or reinstate the available limits of insurance of this Policy.

If purchased, the Extended Reporting Period does not apply to any "claim" or "suit" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy. This applies, whether that other insurance is issued by the Company or any other insurer, and to any "claim" or "suit" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for the failure of any "insured" to comply with the terms and conditions of that other insurance.

**SECTION VII – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Claim" means a written demand for monetary "damages".

**5.** "Damages" means judgments, awards, and settlements that the "insured" becomes legally obligated to pay as a result of a covered "claim". "Damages" do not include declarative, injunctive or other non-pecuniary or equitable relief, punitive or exemplary damages, or the amount of any multiplied damages awarded that is in excess of the damage award so multiplied.

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the "insured's" responsibility to pay "damages" is determined in a "suit" on the merits, in the territory described in **a.** above.

**7.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**8.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**9.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**10.** "Insured" means any person or entity qualifying as such under **SECTION II – WHO IS AN INSURED**.

**11.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

**e.** An elevator maintenance agreement.

**12.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**13.** "Loading or unloading" means the handling of persons or property:

**a.** After being moved from the place where accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While in or on an aircraft, watercraft or "auto"; or

**c.** While being moved from an aircraft, watercraft or "auto" to the place where finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**14.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or
**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:
**(a)** Snow removal;
**(b)** Road maintenance, but not construction or resurfacing; or
**(c)** Street cleaning;
**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**15.** "Named insured" means a person or entity specifically identified as a "named insured" in the Declarations or in an endorsement to this Policy.

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Policy period" means the period shown in the Declarations, unless the Policy is terminated at an earlier date.

**19.** "Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant including, but not limited to smoke, vapor, soot, fumes, odors, fibers, radiation, acid, alkalis, petroleums, chemicals, or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned, or reclaimed.

For injury or damage that takes place in or originates in the state of Indiana or New Mexico, the specific examples identified as "pollutants" include, but are not limited to the following and their break down components: diesel, kerosene, and other fuel oils; gasoline, butane, propane, natural gas, and other fuels; brake fluid, transmission fluid, and other hydraulic fluids; ethylene glycol, methanol, ethanol, isopropyl alcohol, and propylene glycol, and other antifreeze additives; grease, tar, petroleum distillates, and other petroleum products; carbon monoxide, chlorine and other exhaust gases; stoddard solvent, mineral spirits, and other solvents; chromium compounds; emulsions/emulsifiers; naphtha; tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroform, and other dry cleaning chemicals; methyl isobytyl ketone; methyl ethal ketone; n-butyl acetate; 2-butoxyethanol; hexylene glycol; peroxides; Freon; polychlorinated biphenyl (PCB); CFC113; chlorofluorocarbons; chlorinated hydrocarbons; adhesives; pesticides; insecticides; fungicides; rodenticides; barium; 1, 2-Dichloroethylene; ethylene dichloride; dichloromethane; methylene chloride; ethylbenzene; lead; mercury; selenium; sulfate; xylene; silica; sewage; industrial waste materials; farm waste materials or odors including, but not limited to manure, urine, slurry, toxic algae, bedding, compost, milk; pharmaceutical products such as steroids, antibiotics, vitamins and supplements; fertilizers and nutrients such as nitrogen, phosphorus potassium and storm water and irrigation runoff containing any such chemicals; disease causing pathogens such as salmonella, E. coli, Cryptosporidium, and fecal coliform; hydrogen sulfide; ammonia; methane gas; heavy metals such as copper, zinc, chromium, arsenic, nickel, and cadmium; salts such as sodium, calcium, magnesium, potassium, chloride, bicarbonate, carbonate and nitrate; and all substances specifically listed, identified, or described by one or more of the following references: **Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances** (1997 and all subsequent editions), **Agency for Toxic Substances and Disease Registry ToxFAQsTM**, or **U.S. Environmental Protection Agency EMCI Chemical References Complete Index**. Substances identified as examples above or by the referenced lists also include materials or substances to be disposed of, discarded, recycled, stored, reconditioned, or reclaimed.

This definition of "pollutants" as amended for injury or damage that takes place in or originates in the state of Indiana or New Mexico, applies whether or not such solid, liquid, gaseous, bacterial, fungal, electromagnetic, thermal or acoustic irritant or contaminant is your product or products used by or for you, or is an integral part of or incidental to your business or operations, or has any function in your business, operations, premises, site, or location.

**20.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

 Includes Material © ISO Properties, Inc., 2003 

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any "insured";

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a Policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**21.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**22.** "Retroactive date" means the date specified in the Declarations or endorsements to this Policy after which "bodily injury", "property damage" must take place or an offense must be committed.

**23.** "Suit" means a civil proceeding in which "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

**24.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**25.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**26.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**27.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and

**(2)** The providing of or failure to provide warnings or instructions.

**NUCLEAR ENERGY LIABILITY EXCLUSION**

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this provision:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

 Includes Material © ISO Properties, Inc., 2003 

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";
**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";
**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 Includes Material © ISO Properties, Inc., 2003 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLICY AMENDMENT - EXTRINSIC EVIDENCE

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**ALL COVERAGE FORMS**

Notwithstanding any provision of this Policy to the contrary, all Insuring Agreements in all Coverage Forms, Coverage Sections, Coverage Parts, or endorsements included in this Policy are amended by adding the following:

Our right and duty to defend or indemnify the insured against any claim or suit will be determined by review of the facts and allegations pleaded and the terms of this Policy, and we may look to and consider extrinsic evidence outside of the allegations, facts pleaded, or any combination thereof by any claimant to determine whether we owe a duty to defend or indemnify against any such claim or suit.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDED CONDITION - PREMIUM AUDIT

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
| --- | --- | --- |
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**ALL COVERAGE FORMS**

The **Premium Audit** Condition of this Policy is deleted and replaced by the following:

**Premium Audit**

We will compute all premiums for this Policy in accordance with our rules and rates.

Premium for this Policy, shown on the Declarations page, is a deposit premium only and will be credited toward the final earned premium calculated by premium audit and due at the end of the policy period.

**a.** At the close of each audit period, or any part thereof, terminating at the end of the policy period or upon cancellation, if applicable, we may conduct an audit of your books and records to determine the actual earned premium for the policy period. Such premium amount will be calculated in accordance with the Basis of Premium shown on the Declarations page of this Policy.

**b.** If the total earned premium calculated for that period is greater than the TOTAL PREMIUM (DEPOSIT PREMIUM) paid, as indicated on the Declarations page, the additional premium owed based upon such premium audit calculation is due upon notice to the first Named Insured.

**c.** If the total earned premium calculated for that period is less than the TOTAL PREMIUM (DEPOSIT PREMIUM) paid, as indicated on the Declarations page, we will retain no less than the **Minimum and Deposit Premium**, as described in Paragraph 1. of the Additional Policy Provision - Premium endorsement attached to this Policy.

The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request. Failure to provide such records upon request will be deemed a breach of Policy Conditions, which may subject this Policy, as well as any other policies issued to you, to cancellation. We have the right, but not the obligation to conduct an audit of records needed for premium computation after the expiration of this Policy. Audits may be conducted physically, remotely, or by any other means we may choose.

Any refusal or failure by you: a) to maintain or provide needed records or b) to allow us to conduct an audit of needed records will result in our developing and calculating a final audit premium based on information available to us and without your cooperation and assistance. If final premium audits calculated without your cooperation and assistance result in additional premium owed to us, you are obligated and agree to pay such additional premium.

You may dispute such final premium audit results, but only if you provide notice and explanation of your dispute to us, in writing, and your written notice includes verifiable documentation that supports your dispute and allows for premium computation. Refusal or failure to provide written notice of your dispute along with verifiable documentation supporting your dispute and allowing for premium computation will indicate to us your agreement with the audit results.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RETROACTIVE DATES - "YOUR PRODUCT"

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The RETROACTIVE DATE on the Declarations is amended as shown below:

**SCHEDULE OF RETROACTIVE DATES**

| **"Your Products":** | **Applicable Retroactive Date:** |
|---|---|
| Hydroxie Products | 03/01/2024 |
| Kavahh Products | 05/07/2025 |

All dates shown in the Schedule above are effective at 12:01 AM at the address of the “named insured” shown on the Declarations.

The Limit of Insurance shown on the Declarations Page applies to “bodily injury” or “property damage” arising out of “your product” specified in the Schedule above that takes place on or subsequent to such product’s Applicable Retroactive Date shown in the Schedule above, and prior to the end of the “policy period”.

For the purposes of determining the Applicable Retroactive Date, all “bodily injury” or “property damage” logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision will be deemed to have first taken place at the time the first of such “bodily injury” or “property damage” took place. All such "bodily injury" or “property damage” will be deemed to be the same “bodily injury” or “property damage” even though the nature and extent of any resulting injury or damage may change and even though the resulting injury or damage may be continuous, progressive, cumulative, changing or evolving, and even though the resulting injury or damage may be or may involve a continuous or repeated exposure to substantially the same general harm.

All claims based upon such related "bodily injury" or “property damage” shall be deemed to constitute a single claim and be subject to a single Limit of Insurance.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CLAIMS MADE AND REPORTED ENDORSEMENT (GENERAL LIABILITY)

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**

This Policy is amended to Claims Made and Reported coverage. For coverage to apply, a "claim" must be first made against an insured during the "policy period" and must be reported in writing to the company within the "policy period" or an extended reporting period, if applicable.

Paragraph **1. b.** of in **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is amended by adding the following:

> This insurance applies to "bodily injury" and "property damage" only if a "claim" for "damages" because of the "bodily injury" or "property damage" is first reported in writing to the Company during the "policy period".

Paragraph **1. b.** of **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended by adding the following:

> This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if a "claim" for "damages" because of "personal and advertising injury" is first reported in writing to the Company during the "policy period".

**SECTION V—CLAIM REPORTING PROVISION** is deleted and replaced by the following:

**SECTION V—ADDITIONAL TIME IN WHICH TO REPORT CLAIMS FIRST MADE AT THE END OF THE POLICY PERIOD**

If a "claim" is first made against any "insured" during the last fourteen (14) calendar days of this "policy period", such "claim" will be treated as if it had been reported to the Company during this "policy period" if:

1. The "insureds" demonstrate reasonable efforts to report such "claim" to us; and
2. The "insureds" provide us with written notice of such "claim" no later than thirty (30) calendar days after the end of this "policy period".

This **SECTION V** does not apply to any "claim" or "suit" that is covered in whole or in part under any other insurance, except for insurance purchased specifically to apply as excess over this Policy. This applies whether that other insurance is issued by the Company or any other insurer, and to any "claim" or "suit" that would be covered by that other insurance but for the exhaustion of the limit of insurance or but for failure of any "insured" to comply with the terms and conditions of that other insurance.

**SECTION VI—OPTIONAL EXTENDED REPORTING PERIOD**, paragraph **1.** is deleted and replaced by the following;

1. The "named insured" shall have the right to purchase an Extended Reporting Period during which you may report to us a "claim" that is first made against any "insured" during such Extended Reporting Period and that results from a "bodily injury" or "property damage" that takes place or "personal and advertising injury" caused by an offense committed, subsequent to the Policy "retroactive date" and before the end of this "policy period" and to which this Policy applies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE TERRITORY- WORLDWIDE COVERAGE

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPETED OPERATIONS LIABILITY COVERAGE**

The following is added to the **CONDITIONS** Section of this Policy:

**Expanded Coverage Territory**

**a.** If claim or "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, the Company shall maintain the duty to defend and investigate any claim or “suit” unless:

**(1)** We are prohibited by law from defending the “insured” in such claim or “suit”; or
**(2)** We elect at our discretion to allow the “insured” to initiate the investigation or defense of such claim or “suit”.

In the event **(1)** or **(2)** above applies, the “insured” shall have the duty to defend and investigate such claim or “suit”. We will then reimburse the “insured”, under Supplementary Payments, for any reasonable and necessary expenses incurred for the investigation or defense of any claim or "suit" seeking “damages” to which this insurance applies, that we would have paid had we investigated or defended such claim or “suit”. However, we shall have the right, but not the duty, to associate in the investigation of such claim or “suit”.

**b.** If the “insured” becomes legally obligated to pay sums because of “damages” to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and the investigation and defense of such claim or “suit” is pursuant to **a.(1)** or **a.(2)** above, the “insured” may settle any claim or “suit” by first obtaining the Company’s written permission for such settlement, with such permission not to be unreasonably withheld. We will then reimburse the “insured” for payments made in such settlements.

**c.** All payments or reimbursements we make for “damages” because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the “insured” became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**d.** The “insured” must fully maintain any coverage required by law, regulation or other governmental authority during the “policy period”, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

The definition of “coverage territory” in the **DEFINITIONS** Section of this Policy is deleted and is replaced by the following:

"Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIFE SCIENCES - COMPOSITE RATE ENDORSEMENT

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**SCHEDULE**

| | |
|---|---|
| Composite Rate: | REDACTED |
| Premium Basis: | |

A. This Policy is rated on a composite rate basis. The Composite Rate shown in the Schedule above is a composite of the Rates shown on the Declarations page of this Policy.

B. The premium stated in the Declarations of this Policy is a deposit premium only. Upon expiration or cancellation of the Policy, the final earned premium will be computed by applying the Composite Rate shown in the Schedule above as it applies to the Premium Basis shown in the Schedule above. To the extent this endorsement conflicts with the Premium Audit provision of this Policy, the provisions of this endorsement will apply. All non-conflicting terms of the Premium Audit provision of this Policy continue to apply.

C. A complete re-survey of the exposures and revision of rate may be made at any time at our request. You agree to notify us if at any time your operations or exposures change.

D. If this Policy is subject to an Audit Noncompliance Charge, any such charge assessed will be on the basis of the Composite Rate shown in the Schedule above.

E. The basis used for determining the premium charge for each classification is shown in the Schedule above. The definition of each Premium Basis is as follows:

1. Area

The total number of square feet of floor space at the insured premises, computed as follows:

a. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   (1) Courts and mezzanine types of floor openings.
   (2) Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

b. For tenants, determine the area they occupy in the same manner as for entire buildings.

c. The rates apply per 1,000 square feet of area.

2. Gross Sales

a. Definition

The gross amount charged by the "named insured", concessionaires of the "named insured" or by others trading under the insured's name for:

(1) All goods or products, sold or distributed;
(2) Operations performed during the "policy period";
(3) Rentals; and
(4) Dues or fees.

b. Inclusions

The following items shall not be deducted from gross sales:

(1) Foreign exchange discounts;
(2) Freight allowance to customers;
(3) Total sales of consigned goods and warehouse receipts;
(4) Trade or cash discounts;
(5) Bad debts; and
(6) Repossession of items sold on installments (amount actually collected).

c. Exclusions

The following items shall be deducted from gross sales:

(1) Sales or excise taxes which are collected and submitted to a governmental division;
(2) Credits for repossessed merchandise and products returned;
(3) Allowances for damaged and spoiled goods;
(4) Finance charges for items sold on installments;
(5) Freight charges on sales if freight is charged as a separate item on customers invoice;
(6) Royalty income from patent rights or copyrights which are not product sales;
(7) Rental receipts for products liability coverage only;
(8) Intercompany sales—sales which are collected by a "named insured" under this Policy from another "named insured" under this Policy; and
(9) Chargebacks—sales price reduction amounts that apply when your customer is required by Medicare, Medicaid or a private health Insurance contract to sell your product at a reduced contractual price.

d. Application

The rates apply per $1,000 of Gross Sales.

3. Participants

a. Definition

The total annual number of individuals who enroll as test subjects in clinical trials covered during the "policy period".

b. Inclusions

The following people shall be included as a participant:

(1) Individuals who participate in a pre-trial evaluation to determine acceptance into the trial based on inclusion/exclusion criteria.
(2) Individuals who enroll as a test subject and abandon the study at any time.

c. Application

The rates apply per Participant.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST VENDORS TO US

| *Attached To and Forming Part of Policy*<br>0100370510-0 | *Effective Date of Endorsement*<br>05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured*<br>Hydroxie LLC |
|---|---|---|
| *Additional Premium:*<br>REDACTED | *Return Premium:*<br>REDACTED | |

**This endorsement modifies insurance provided under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The following is added to item **8. Transfer Of Rights Of Recovery Against Others To Us** of **SECTION IV** of this Policy:
Subject to the conditions in this endorsement, we waive any right of recovery we may have against your "vendor" because of payments we make for "bodily injury" or "property damage" arising out of "your product" and included in the "products-completed operations hazard" of this policy but only if:

a. "Your product" is sold or distributed by a "vendor" pursuant to a written contract with such "vendor"; and
b. You have expressly agreed to this waiver in the written contract with the "vendor"; and
c. The "bodily injury" or "property damage" takes place subsequent to the execution of the written contract with the "vendor".

However, this waiver does not apply to any "vendor" that:

1. Issues any express warranty unauthorized by you;
2. Makes any physical or chemical change in the product;
3. Repackages the product, unless it is unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer, and then is repackaged in the original container;
4. Fails to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the product;
5. Demonstrates, installs, services or repairs the product, unless such operations are performed at the vendor's premises in connection with the sale of the product; or
6. Re-labels the products.

For purposes of this endorsement, "vendor" means a person or organization who, pursuant to a written contract with you, sells or distributes "your product" to others and is included as an Additional Insured by endorsement to this Policy. "Vendor" does not include any person or organization from whom you have acquired:

1. "Your product"; or
2. Any ingredient included in "your product"; or
3. Any component that becomes part of, enters into or accompanies "your product" including but not limited to any label or instructions; or
4. Any container that accompanies or contains "your product".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL POLICY PROVISIONS - PREMIUM

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**SCHEDULE**

| | | |
|---|---|---|
| **A.** | **Minimum and Deposit Premium:** | 100% |
| **B.** | **Percentage of Premium retained (Minimum Earned Premium):** | 25% |

This endorsement sets forth the **Minimum Earned Premium** and **Minimum and Deposit Premium** provisions for this Policy, calculated as follows:

1. The **Minimum and Deposit Premium** for this Policy is shown in item **A.** of the Schedule above and is a percentage of the TOTAL PREMIUM (DEPOSIT PREMIUM) shown on the Declarations page, plus any premium adjustments by endorsement and any additional premium calculated as a result of any premium audit, if applicable.

2. Audits that indicate a return premium will not reduce the **Minimum and Deposit Premium** described in Paragraph **1.** above.

3. If you cancel this Policy and:

   a. The Policy **is not** subject to audit, the return premium will be 90% of the unearned premium. However, in no event will we retain less than the **Minimum Earned Premium**, calculated by multiplying the percentage shown in item **B.** of the Schedule above by the **Minimum and Deposit Premium** described in Paragraph **1.** above.

   b. The Policy **is** subject to audit, the earned premium will be determined by final audit. However, in no event will such earned premium be less than the **Minimum Earned Premium**, calculated by multiplying the percentage shown in item **B.** of the Schedule above by the **Minimum and Deposit Premium** described in Paragraph **1.** above.

4. If we cancel the Policy for any reason, other than nonpayment of premium, you will be returned the full amount of unearned premium, as determined by premium audit and without any Minimum Earned Premium retention as described in **B.** in the Schedule above.

   Provided that, if any Audit Noncompliance Charge has been imposed on this Policy and any additional premium computed as a result is owed, unearned premium will be calculated after deducting such charge due to us.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

| *Attached To and Forming Part of Policy*<br>0100370510-0 | *Effective Date of Endorsement*<br>05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured*<br>Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

**A.** The following exclusions are added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or
2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:
   - **a.** Physical injury that involves a substantial risk of death; or
   - **b.** Protracted and obvious physical disfigurement; or
   - **c.** Protracted loss of or impairment of the function of a bodily member or organ; or
3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or
4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**TERRORISM PUNITIVE DAMAGES**

Damages arising directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

 Includes Material © Insurance Services Office, Inc., 2015 

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", “personal injury”, "injury" or "environmental damage" as may be defined in any applicable Policy.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Policy.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

 Includes Material © Insurance Services Office, Inc., 2015 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - BIOMETRIC INFORMATION PRIVACY LAWS

| | | |
|---|---|---|
| *Attached To and Forming Part of Policy*<br>0100370510-0 | *Effective Date of Endorsement*<br>05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured*<br>Hydroxie LLC |
| *Additional Premium:*<br>REDACTED | *Return Premium:*<br>REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this Policy:

**BIOMETRIC INFORMATION PRIVACY LAW EXCLUSION**

This insurance does not apply to and the Company shall have no obligation to defend or indemnify any insured for any injury or damage or legal liability of any kind, including any claim or suit, arising directly or indirectly out of, related to or, in any way involving any actual or alleged violation of the Illinois Biometric Information Privacy Act (BIPA) or any other state or federal law or regulation governing the collection, use, sale, transfer, storage, disposal, or destruction of biometric data, biometric information, or other personal identifying information or data, and including any amendment of or addition to such laws, or any regulation promulgated under or as a result of any such laws.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSIONS- LIFE SCIENCES

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALLIED HEALTH GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The following exclusions are added to this Policy:

1. This insurance does not apply to any “claim” or “suit” for "bodily injury", "property damage", “personal injury” or "personal and advertising injury" arising out of, related to, caused by, contributed to by, or in any way connected with the manufacturing, distribution, sale, disposal, testing, handling, application, consumption or use of, or exposure to any of the following, by whatever name manufactured, distributed or sold:

   a. any of the ingredients or additives listed below;

   b. any products which contain ingredients or additives similar to the chemical formulary of the ingredients or additives listed below;

   c. any product, ingredient or additive which is a derivative of an ingredient or additive listed below; or

   d. any ingredient or additive which is generally known in the trade in which it is used as having a formulation, structure or function similar to those listed below; or

   e. any product that contains, regardless of the measure or amount, any of the ingredients or additives listed below, regardless of whether or not any of these ingredients or additives contributed to any actual or alleged "bodily injury", "property damage", “personal injury” or "personal and advertising injury":

      (1) Birth Control or fertility drugs, medications or devices
      (2) Bisphosphonates
      (3) Cisapride
      (4) Cox -2 Inhibitors including Vioxx, Celebrex and Bextra or other rofecoxib, celecoxib or Valecoxib products
      (5) Di(2-ethylhexyl) phthalate (DEHP)
      (6) DES (Diethylstilbestrol and/or Dienestrol)
      (7) Fenfluramine, Dexfenfluramine
      (8) Fentanyl
      (9) Isotretinoin (Accutane)
      (10) Latex
      (11) Melamine
      (12) Metoclopramide
      (13) Oxycodone (controlled release), Oxycodone Hydrochloride, Oxycontin and its bioequivalent (generic) version
      (14) Phentermine
      (15) Phenylpropanolamine (PPA)

(16) Silicone
(17) Thalidomide
(18) Thimerosal
(19) Troglitazone
(20) N-Nitrosodimethylamine (NDMA), dimethylnitrosamine (DMN) and N-Methyl-N-nitrosomethanamine

2. This insurance does not apply to "bodily injury" or "property damage" arising out of the actual, alleged or threatened hazardous properties of any goods or products declared unsafe by any governmental or regulatory authority on the basis of such hazardous properties, regardless of whether such goods or products were declared unsafe before or after they were disposed of, distributed, handled, manufactured or sold; or before such damages were incurred.

   However, this exclusion does not apply to "your product", to which this insurance applies, if it was disposed of, distributed, handled, manufactured and sold before such product was declared unsafe, if it was declared unsafe after the beginning of the "policy period".

3. This insurance does not apply to "bodily injury" or "property damage" in connection with any "human clinical trial" if such injury or damage arises out of any unapproved exposure to material, upon or within human beings during such a trial, that occurs after any of the following actions by any governmental or regulatory authority having jurisdiction:
   a. placement of a hold on the trial;

   b. withdrawal of approval for an Investigational New Drug Application, Investigational Device Exception Application or similar authorization applicable to the trial; or

   c. order to discontinue the trial.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - INGREDIENTS OR ADDITIVES

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALLIED HEALTH GENERAL LIABILITY COVERAGE**
**ALLIED HEALTH PROFESSIONAL LIABILITY COVERAGE**
**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The following exclusion is added to this Policy:

This insurance does not apply to any “claim” or “suit” for "bodily injury", "property damage", “personal injury” or "personal and advertising injury" arising out of, related to, caused by, contributed to by, or in any way connected with the manufacturing, distribution, sale, disposal, testing, handling, application, consumption or use of, or exposure to any of the following, by whatever name manufactured, distributed or sold:

a. any of the ingredients or additives listed below;
b. any products which contain ingredients or additives similar to the chemical formulary of the ingredients or additives listed below;
c. any product, ingredient or additive which is a derivative of an ingredient or additive listed below; or
d. any ingredient or additive which is generally known in the trade in which it is used as having a formulation, structure or function similar to those listed below; or
e. any product that contains, regardless of the measure or amount, any of the ingredients or additives listed below, regardless of whether or not any of these ingredients or additives contributed to any actual or alleged "bodily injury", "property damage", “personal injury” or "personal and advertising injury":

(1) Acetyl propionyl (2,3-pentanedione)
(2) Anabolic-Androgenic Steroids
(3) Androstenedione and any derivatives and all steroid precursors
(4) Aristolochia spp., aristolochia, aristolochic acids, aristolochia fangchi, asarum app., bragantia spp., clematis spp., akebia spp., cocculus spp., diploclisia spp., menispernum spp., sinomenium spp., mu tong, fang ji, guang fang ji, kanmokutsu, mokutsu, and any adulterated botanicals, botanical derivatives or other products that contain aristolochic acid, aristolochic acid derivatives or aristolochic acid extracts
(5) Beta-methylphenethylamine
(6) Bitter Orange, Citrus Aurantium
(7) Cannabidiol, CBD
(8) Chaparral
(9) Colloidal Silver
(10) Comfrey
(11) Diacetyl (butanedion/butane-2,3-dione)
(12) Dendrobium, Dendrobe Noble, Dendrobium Extract, Dendrobium nobile, Dendrobium officinale, Extrait de Dendrobium, Jin Chai Shi Hu (D. nobile), Nobile Dendrobium (D. nobile), Orchid Stem, Stem-Orchid, Tie Pi Shi (D. officinale), Vinterdendrobium (D. nobile), Phenylethylamine
(13) DMAA, 1,3-dimethylamylamine, Geranamine, 1,3-dimethylpentylamine, methylhexanamine, geranium oil, geranium extract
(14) DMBA, 1,3-Dimethylbutylamine, 4-amino-2-methylpentane citrate, AMP citrate

(15) Ephedrine alkaloids including ephedra and ephedrine (also known as Ma Huang, Bishops Tea and Chi Powder), methylephedrine, norephedrine (also known as phenylpropanolamine), pseudoephedrine & norpseudoephedrine
(16) Gamma Hydroxy Butrate (GHB), Gamma Butyrate (GBL), 1,4 Butanediol (BD)
(17) Germander
(18) Germanium
(19) Glyburide, unlabeled glyburide, Liqiang 4, Liqiang Xiao Ke Ling (Liqiang Thirst Quenching Efficacious)
(20) Higenamine, 1-[(4-Hydroxyphenyl)methyl]-1,2,3,4-tetrahydroisoquinoline-6,7-diol; 1-(p-hydroxybenzyl)-6,7-Dihydroxy-1,2,3,4-Tetrahydroisoquinolin; 1(S)-Norcoclaurine; dl-Demethylcoclaurine; DMC; Higénamine; Higenamine Hydrobromide; Higenamine Hydrochloride; Higenamine Oxalate; Higenamine Tartrate; Norcoclaurine; O-Demethylcoclaurine
(21) Hormone Replacement Therapy products of animal origin
(22) Jin Bu huan
(23) Kava, ava, ava pepper, awa, kava root, kava-kava, kawa, Piper methysticum Forst. f., Piper Methysticum G. Forst, rauschpfeffer, intoxicating pepper, kava kava, kava pepper, kawa kawa, kawa-kawa, kew, Piper methysticum, sakau, tonga, wurzelstock, yangona
(24) Kratom
(25) Lobelia
(26) Magnolia or Stephania, or any adulterated botanicals, botanical derivatives or any other products that contain Magnolia or Stephania, or any Magnolia or Stephania derivates or extracts
(27) Organ/Glandular Extracts
(28) Pennyroyal Oil
(29) Picamilon, pikatropin, pikamilon, nicotinyl-gamma-aminobutyric acid, nicotinyl-GAB
(30) Pyrrolizidine alkaloids
(31) Sildenafil, tadalafil or vardenafil
(32) Vinpocetine, Cavinton, Intelectol, ethyl apovincaminate
(33) Yohimbe, Yohimbe Bark, Yohimbine

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCEPTION TO INGREDIENTS OR ADDITIVES EXCLUSION

| | | |
|---|---|---|
| *Attached To and Forming Part of Policy*<br>0100370510-0 | *Effective Date of Endorsement*<br>05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured*<br>Hydroxie LLC |
| *Additional Premium:*<br>REDACTED | *Return Premium:*<br>REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALLIED HEALTH GENERAL LIABILITY COVERAGE**
**ALLIED HEALTH PROFESSIONAL LIABILITY COVERAGE**
**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**SCHEDULE**

| Description of Product(s) to which LSC3003 does not apply: |
|---|
| Kratom |
| Kava |

Endorsement LSC3003, **EXCLUSION—INGREDIENTS OR ADDITIVES**, is amended by the following:

It is agreed that LSC3003, **EXCLUSION—INGREDIENTS OR ADDITIVES** does not apply to the product, ingredient or additive shown in the Schedule above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - TRANSMISSIBLE SPONGIFORM ENCEPHALOPATHY (TSE)

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

The following exclusion is added to this policy:

This insurance does not apply to any claim or suit for “bodily injury”, “property damage”, “personal injury” or “personal and advertising injury” or any other injury, loss or damage arising directly or indirectly out of, related to, or, in any way involving Transmissible Spongiform Encephalopathy (TSE), including, but not limited to Creutzfedlt-Jakob Disease, New Variant Creutzfeldt-Jakob Disease (nv-CJD), Gerstmann-Straussler-Scheinker Encephalopathy or Bovine Spongiform Encephalopathy (BSE), sometimes referred to as mad cow disease.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - BUSINESS CONDUCT

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**

The following exclusion is added to this policy:

**Business Conduct**

This insurance does not apply to "bodily injury" or "property damage" or "personal and advertising injury" arising directly or indirectly out of, related to, or, in any way involving:

**(1)** Any actual or alleged anti-trust law violation, unfair competition, price fixing or agreement or conspiracy to restrain trade;

**(2)** Any actual or alleged infringement of copyright, patent, trademark, service mark, right of publicity, slogan, trade secret, trade dress, trade name, or other intellectual property;

**(3)** Actual or alleged false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition;

**(4)** Any actual or alleged violation by any "insured", or by anyone with the "insured's" knowledge, of any law or regulation imposing criminal liability; or

**(5)** Any products or goods manufactured, sold, handled or distributed or work completed by the "insured" or others operating under the direction or control of the "insured" in violation of any law, statute or ordinance of any federal, state or municipal government, or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - PATHOGEN AND RELATED HAZARDS

| *Attached To and Forming Part of Policy*<br>0100370510-0 | *Effective Date of Endorsement*<br>05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured*<br>Hydroxie LLC |
|---|---|---|
| *Additional Premium:*<br>REDACTED | *Return Premium:*<br>REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**ALLIED HEALTH PROFESSIONAL LIABILITY COVERAGE**

The **Communicable Disease** and **Fungi And Bacteria** exclusions in this Policy are deleted and replaced by the following:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of, related to, or in any way involving the inhalation of, absorption of, ingestion of, contact with, exposure to, existence of, or presence of any form of "pathogen and related hazards".

This exclusion applies, but is not limited to the following:

a. Providing or failing to provide any supervision, instructions, recommendations, warnings, or advice related to any actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any form of "pathogen and related hazards";
b. Failure to provide an environment safe from "pathogen and related hazards" or the actual, alleged, or threatened transmission to others;
c. The prevention or suppression of, or failure to prevent or suppress, "pathogen and related hazards" or the actual, alleged, or threatened transmission to others;
d. The reporting or failure to report to the proper authorities;
e. The negligent hiring, employment, training, supervision, or retention of any insured, "employee", agent, or other person with respect to a. through d. above; or
f. Any loss, cost, or expense arising out of, related to, or in any way involving any claim, "suit", request, or demand that any insured:
   (1) Assess the presence, absence, amount, or effects of any “pathogen and related hazards”;
   (2) Identify, sample, test, monitor, clean up, remove, dispose of, or neutralize the effects of any “pathogen and related hazards” in any building, material, animal, or product, including but not limited to “your product”; or
   (3) Respond to any “pathogen and related hazards” in any manner other than as described in (1) or (2) above.

This exclusion applies to any claim or "suit" regardless of whether any "pathogen and related hazards" is the initial precipitating cause or is in any way a cause of injury or damage and regardless of whether any other actual or alleged cause, event, material, or product contributed concurrently, proximately, or in any sequence to such injury or damage, including whether any actual or alleged injury or damage arises out of a chain of events that involves or includes "pathogen and related hazards".

As used in this exclusion, "pathogen and related hazards" includes, without limitation, any:

a. Fungus, including but not limited to any type of mold or mildew;
b. Protist, including but not limited to algae and slime mold;

c. Chemical matter, or compound produced or released by a fungus or protist, including but not limited to any mycotoxin, toxin, spore, scent, fragment, metabolites, or other by-product that is produced by a. or b. above;
d. Pathogen, including but not limited to virus, bacterium, prion, or protozoa or other microorganism;
e. Sexually transmitted disease, including but not limited to Acquired Immunodeficiency Syndrome or Human Immunodeficiency Virus, or exposure to another having the same, or to substances or materials contaminated with the same, or fear of contracting Acquired Immunodeficiency Syndrome, Human Immunodeficiency Virus, or any other communicable disease; or
f. Infectious or contagious disease transmissible by direct contact with an affected individual or the individual's discharges or by indirect means.

Solely regarding **Bodily Injury and Property Damage Liability**, if such coverage is included in this Policy, this exclusion does not apply to fungi or bacteria on, or contained in, a good or product intended for bodily consumption. However, this exception does not apply to water droplets originating from such good or product, except where inhalation of such droplets is an intended use of such good or product.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE EXCLUSION - PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

The following exclusion is added to each Coverage Form of this Policy:

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of, related to, or in any way involving "Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)".

This exclusion applies to any claim or suit regardless of whether the PFAS is the initial precipitating cause or is in any way a cause of "bodily injury", "property damage", or "personal and advertising injury" and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage", or "personal and advertising injury" arises out of a chain of events that involves or includes any PFAS.

For the purposes of this endorsement, "Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)" means:

**1.** A perfluoroalkyl or polyfluoroalkyl substance, or any manmade chemical that has multiple fluorine atoms attached to an alkyl chain including, but not limited to, perfluorooctanesulfonic acid (PFOS), perfluorooctanoic acid (PFOA), perfluorinated chemicals or perfluorochemicals (PFCs), C8, Teflon, GenX, fluorotelomers, perfluorooctanoate, perfluorocaprylic acid, pentadecafluorooctanoic acid, fluorosurfactants, perfluorooctanesulfonamide (PFOSA), , perfluorononanoic acid (PFNA), perfluorohexanoic acid (PFHxA), perfluorobutanesulfonic acid, perfluorobutane sulfonate (PFBS), and any precursor to or derivative of these chemicals; or

**2.** Any daughter compound or degradation by-product of any substance or chemical listed or described in **1.** above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION - KRATOM

| *Attached To and Forming Part of Policy*<br>0100370510-0 | *Effective Date of Endorsement*<br>05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured*<br>Hydroxie LLC |
|---|---|---|
| *Additional Premium:*<br>REDACTED | *Return Premium:*<br>REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

Solely for the purposes of this endorsement:

**A.** The following exclusions are added to this Policy:

This insurance does not apply to any:

**1. Kratom, Opioids, and Narcotics**

"Claim" or "suit" arising out of, related to, or in any way involving any actual or alleged:

**a.** Abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any:

**(1)** Opioid or narcotic drug, medication, or substance, kratom derived product, derivative of kratom, or opioid receptor antagonist of any type, nature, or kind, including but not limited to, codeine, fentanyl, hydrocodone, oxycontin, hydromorphone, meperidine, methadone, oxycodone, naloxone, morphine, oxymorphone, thebaine, tramadol, naltrexone, buprenorphine, or any other opioid or narcotic drug, medication, or substance of any type, nature, or kind, whether naturally occurring, semisynthetic, or independently synthesized; or

**(2)** Controlled substance as defined by or included in the schedules of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, any amendments thereto, or any similar provisions of any state or local law;

**b.** Failure to provide an environment safe from any actual or alleged abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above;

**c.** Failure to warn or inadequacy or absence of any warning related to the dangers of the environment that could contribute to or the consequences of any abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above;

**d.** Failure or inadequacy of any controls, practices, or procedures to prevent, suppress, or report behavior relating to any actual or alleged abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above;

**e.** Abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above and that:

**(1)** Seeks recovery of economic costs including costs for medical, police, or emergency services;

**(2)** Alleges interference with a right common to the general public including, but not limited to, claims for nuisance; or

**(3)** Seeks injunctive or other non-pecuniary relief relating such abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use;

or

**f.** Provision of or failure to provide any first aid or medical treatment, or otherwise handle or respond after any abuse, misuse, illicit use, overuse, unlawful distribution, diversion, or addictive use of any substance described in **a.(1)** or **a.(2)** above.

This exclusion applies even if the claims against any "insured" allege negligence including, but not limited to negligence or other wrongdoing in the supervision, hiring, employment, training, or retention of others by that "insured".

This exclusion applies to any "claim" or "suit" regardless of whether any excluded act listed in items **a.** through **f.** above is the initial precipitating cause or is in any way a cause, and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged injury or damage arises out of a chain of events that involves or includes any excluded act listed in items **a.** through **f.** above.

We shall have no duty to defend or indemnify any "insured" against any "claim" or "suit" or other proceeding alleging "damages" arising directly or indirectly out of, related to, or in any way involving any injury or damage to which this exclusion applies. This exclusion also applies to any obligation to share "damages" with, repay, or indemnify anyone else against whom "damages" are sought because of such injury or damage.

However, this exclusion does not apply to any "bodily injury", "property damage", or "personal and advertising injury" caused by a "defect in manufacturing" of "your product".

**2. Licensing Compliance**

"Claim" or "suit" arising out of, related to, or in any way involving "your product" when any required license or permit is not in full force and effect.

**3. Statutory or Criminal Liability**

"Claim", "suit", fine, or penalty arising out of, related to, or in any way involving any actual or alleged statutory or criminal liability associated with any sale, use, cultivation, or distribution of "your product".

**4. Third-Party Crop Fields**

"Claim" or "suit" arising out of, related to, or in any way involving any actual or alleged cross-pollination or contamination of, or loss or damage to, any third-party field, crop, property, or product because of exposure to "your product".

**5. Personal and Advertising Injury**

"Claim", "suit", fine, or penalty arising out of, related to, or in any way involving any actual or alleged "personal and advertising injury" of any kind or medium.

**6. Advertisement**

"Claim", "suit", fine, or penalty arising out of, related to, or in any way involving any actual or alleged "advertisement" of any kind or medium.

**7. Health Hazard**

Any actual or alleged emergence, contraction, aggravation, threat, or fear of any form of cancer, neurological disease, organ failure, mental illness, birth defect, or organ failure or disruption in the function of any organ as a result of any use of, consumption of, or exposure to "your product".

This exclusion applies regardless of any fault or intent, particular cause of action, or relief sought, including without limitation economic costs or injunctive relief. This exclusion applies regardless of whether such "claim" or "suit" is brought by or on behalf of any individual or group of individuals who has suffered injury or damage, including a class action regardless of whether such "claim" or "suit" is certified as such. This exclusion includes any "claim" or "suit" brought by or on behalf of any domestic or foreign governmental entity including, without limitation, any state government, federal government, regulatory authority, administrative agency, public foundation, non-profit organization, special interest group, or another similar entity or individual who has not themselves suffered injury or damage.

This exclusion applies whether the "claim" or "suit" arises out of any actual or alleged marketing, distribution, or other sales or similar practice including any failure to warn or inadequate warning, defective design of "your product", or interference with a right common to the general public. This includes any allegation of nuisance or any other ground for liability causing or contributing to any "claim" or "suit". This exclusion applies regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence.

If a "claim" is made or a "suit" is filed that includes any allegation that is excluded by this exclusion, this exclusion shall exclude coverage for the entire "claim" or "suit" regardless of whether any portion of the "claim" or "suit" is not excluded or that this insurance would apply in the absence of such excluded allegation.

**8. Class Action**

"Claim" or "suit" brought in whole, in part, as, or within a "class action" proceeding. This exclusion applies to the entire "claim" or "suit" regardless of whether any portion thereof is brought by an individual or group of individuals that is less than the entire purported class.

**B.** The definitions of "occurrence" and "your product" in this Policy are deleted and replaced by the following:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, arising out of any "defect in manufacturing".

"Your product":

**a.** Means any:

**(1)** Kratom good or product manufactured, sold, handled, distributed, or disposed of by:

**(a)** You;
**(b)** Others trading under your name; or
**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers, materials, parts, or equipment furnished in connection with such goods or products described in **a.(1)** above; and

**b.** Includes any:

**(1)** Warranty or representation made at any time with respect to the fitness, quality, durability, performance, or use of any goods or products described in **a.(1)** above; or

**(2)** Provision or failure to provide warnings or instructions.

**C.** The FDA Limitation in this Policy and all references to it are deleted and not replaced.

**D.** The following definitions are added to this Policy:

"Class action" means any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure, authorizing an action to be brought on behalf of a class by one or more representative persons.

"Defect in manufacturing" means any deficiency, inadequacy, or dangerous condition of "your product" caused by an error in the manufacturing of "your product".

**E.** The following condition is added to this Policy:

As a condition of this insurance, you are required to and do warrant that for the duration of this "policy period" your operations will be in full compliance with all state, and local laws, statutes, and regulations applicable to "your product" in all jurisdictions in which you conduct business or operations. This Policy will not apply to any "claim", "suit", "damages", or Supplementary Payments if this condition is not fully satisfied.

**F.** The following exclusion is added to **Exclusions Applicable to Coverage B**, if such coverage is included in this Policy:

This insurance does not apply to any "personal and advertising injury" arising out of, related to, or in any way involving "your product".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - VENDORS (BLANKET)

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**A. SECTION II – WHO IS AN INSURED** is amended to include as an Additional Insured Vendor any person(s) or organization(s) that you are required to include as an Additional Insured Vendor on this Policy by written contract in effect during the "policy period" and executed prior to the "occurrence" causing the "bodily injury" or "property damage", but only with respect to the distribution or sale, in the regular course of the Additional Insured Vendor's business, of "your products" and only for "bodily injury" or "property damage" that was proximately caused by the defective manufacturing, design, or warning of "your product". The coverage afforded to the Additional Insured Vendor is limited to vicarious liability proximately caused by "your product" for such Additional Insured Vendor.

However:

1. The insurance afforded to such Additional Insured Vendor only applies to the extent permitted by law; and
2. Such insurance will not be broader than that which you are required by the written contract to provide for such Additional Insured Vendor.

**B.** The insurance afforded to the Additional Insured Vendor under this endorsement is limited as follows:

1. The insurance afforded to the Additional Insured Vendor does not apply to:
   - **a.** "Bodily injury" or "property damage" for which the Additional Insured Vendor is obligated to pay damages by reason of the assumption of liability for damages that the Additional Insured Vendor would have in the absence of any contract or agreement;
   - **b.** Any express warranty unauthorized by you;
   - **c.** Any physical or chemical change in "your product" made by the Additional Insured Vendor;
   - **d.** Any repackaging of "your product", unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;
   - **e.** Any failure to make such inspections, adjustments, tests, or servicing as the Additional Insured Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of "your product";
   - **f.** Demonstration, installation, servicing, or repair operations, except such operations performed at the Additional Insured Vendor's premises in connection with the sale of "your product";
   - **g.** "Your products" which, after distribution or sale by you, have been labeled, relabeled, or used as a container, part, or ingredient of any other thing or substance by or for the Additional Insured Vendor;

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the Additional Insured Vendor, any employee or agent of the Additional Insured Vendor, or any combination thereof; or

**i.** "Bodily injury" or "property damage" to any employee of the "named insured" or any obligation of the Additional Insured Vendor to indemnify another because of damage arising out of such injury or damage.

**2.** This insurance does not apply to any "insured" person or organization from whom you have acquired any product, or any ingredient, part, or container entering into, accompanying, or containing any such product.

**3.** Where there is no duty to defend the "named insured", there is no duty to defend the Additional Insured Vendor. Where there is no duty to indemnify the "named insured", there is no duty to indemnify the Additional Insured Vendor.

**4.** The Additional Insured Vendor must be represented by the same counsel as the "named insured".

**C.** With respect to the insurance afforded to the Additional Insured Vendor, the following is added to **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**:

The most we will pay on behalf of the Additional Insured Vendor is the amount of insurance:

**1.** Required by the written contract; or

**2.** Available under the applicable Limits of Insurance;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance.

**D.** Duties of the Additional Insured Vendor in the event of an "occurrence", claim, or "suit":

**1.** The Additional Insured Vendor must promptly give notice of an "occurrence", claim made against it, or "suit" to any other insurer that has insurance for a loss to which this insurance may apply.

**2.** The Additional Insured Vendor must promptly tender the defense of any claim made against it or "suit" to any other insurer with a policy under which such Additional Insured Vendor may qualify as a Named Insured or Additional Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - TRADE EVENT - PRIMARY AND NON-CONTRIBUTORY

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**A.** **SECTION II – WHO IS AN INSURED** is amended to include as an Additional Insured any person(s) or organization(s) for whom you are participating in a Trade Event if you are required to include such person(s) or organization(s) as an Additional Insured on this Policy by written contract in effect during the "policy period" and executed prior to the "occurrence" or offense causing the "bodily injury", "property damage", or "personal and advertising injury". The insurance afforded to the Additional Insured under this endorsement is only for vicarious liability imposed on the Additional Insured resulting from your participation in the Trade Event provided that such liability is caused by the sole negligent conduct of the "named insured".

However:

**1.** The insurance afforded to such Additional Insured only applies to the extent permitted by law; and

**2.** Such insurance will not be broader than that which you are required by the written contract to provide for such Additional Insured.

**B.** The insurance provided to the Additional Insured under this endorsement is limited as follows:

**1.** Any coverage provided by this endorsement to the Additional Insured does not apply to "bodily injury", "property damage", or "personal and advertising injury" that takes place after your participation in the Trade Event ends.

**2.** The insurance provided to the Additional Insured shall be excess with respect to any other valid and collectible insurance available to the Additional Insured unless the written contract specifically requires that this insurance apply on a primary and non-contributory basis, in which case this insurance shall be primary and non-contributory.

**3.** Any person or organization qualifying as an Additional Insured under this endorsement becomes an Additional Insured on the later of the following dates:

**a.** The agreed upon date in the written contract that such person or organization was to be an Additional Insured on this Policy provided the written contract was executed prior to the agreed upon date; or

**b.** The effective date of this endorsement.

**4.** Where there is no duty to defend the "named insured", there is no duty to defend the Additional Insured. Where there is no duty to indemnify the "named insured", there is no duty to indemnify the Additional Insured.

**5.** This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the sole negligence of the Additional Insured, any employee or agent of the Additional Insured, or any combination thereof.

**6.** The Additional Insured must be represented by the same counsel as the "named insured".

**C.** With respect to the insurance afforded to the Additional Insured, the following is added to **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**:

The most we will pay on behalf of the Additional Insured is the amount of insurance:

**1.** Required by the written contract; or

**2.** Available under the applicable Limits of Insurance;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance.

**D.** Duties of the Additional Insured in the event of an "occurrence", offense, claim or "suit":

**1.** The Additional Insured must promptly give notice of an "occurrence", offense, claim made against it, or "suit" to any other insurer that has insurance for a loss to which this insurance may apply.

**2.** The Additional Insured must promptly tender the defense of any claim made against it or "suit" to any other insurer with a policy under which such Additional Insured may qualify as a Named Insured or Additional Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - VENDORS (BLANKET) - PRIMARY AND NON-CONTRIBUTORY

| *Attached To and Forming Part of Policy* 0100370510-0 | *Effective Date of Endorsement* 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | *Named Insured* Hydroxie LLC |
|---|---|---|
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**A.** **SECTION II – WHO IS AN INSURED** is amended to include as an Additional Insured Vendor any person(s) or organization(s) that you are required to include as an Additional Insured Vendor on this Policy by written contract in effect during the "policy period" and executed prior to the "occurrence" causing the "bodily injury" or "property damage", but only with respect to the distribution or sale, in the regular course of the Additional Insured Vendor's business, of "your product" and only for "bodily injury" or "property damage" that was proximately caused by the defective manufacturing, design, or warning of "your product". The coverage afforded to the Additional Insured Vendor is limited to vicarious liability proximately caused by "your product" for such Additional Insured Vendor.

However:

**1.** The insurance afforded to such Additional Insured Vendor only applies to the extent permitted by law; and

**2.** Such insurance will not be broader than that which you are required by the written contract to provide for such Additional Insured Vendor.

**B.** The insurance provided to the Additional Insured Vendor under this endorsement is limited as follows:

**1.** The insurance provided to the Additional Insured Vendor shall be excess with respect to any other valid and collectible insurance available to the Additional Insured Vendor unless the written contract specifically requires that this insurance apply on a primary and non-contributory basis, in which case this insurance shall be primary and non-contributory.

**2.** The insurance afforded to the Additional Insured Vendor does not apply to:

**a.** "Bodily injury" or "property damage" for which the Additional Insured Vendor is obligated to pay damages by reason of the assumption of liability for damages that the Additional Insured Vendor would have in the absence of any contract or agreement;

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in "your product" made by the Additional Insured Vendor;

**d.** Any repackaging of "your product", unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;

**e.** Any failure to make such inspections, adjustments, tests, or servicing as the Additional Insured Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of "your product";

**f.** Demonstration, installation, servicing, or repair operations, except such operations performed at the Additional Insured Vendor's premises in connection with the sale of "your product";

**g.** "Your products" which, after distribution or sale by you, have been labeled, relabeled, or used as a container, part, or ingredient of any other thing or substance by or for the Additional Insured Vendor;

**h.** "Bodily injury" or "property damage" arising out of the sole negligence of the Additional Insured Vendor, any employee or agent of the Additional Insured Vendor, or any combination thereof; or

**i.** "Bodily injury" or "property damage" to any employee of the "named insured" or any obligation of the Additional Insured Vendor to indemnify another because of damage arising out of such injury or damage.

**3.** This insurance does not apply to any "insured" person or organization from whom you have acquired any product, or any ingredient, part, or container entering into, accompanying, or containing any such product.

**4.** Where there is no duty to defend the "named insured", there is no duty to defend the Additional Insured Vendor. Where there is no duty to indemnify the "named insured", there is no duty to indemnify the Additional Insured Vendor.

**5.** The Additional Insured Vendor must be represented by the same counsel as the "named insured".

**C.** With respect to the insurance afforded to the Additional Insured Vendor, the following is added to **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**:

The most we will pay on behalf of the Additional Insured Vendor is the amount of insurance:

**1.** Required by the written contract; or

**2.** Available under the applicable Limits of Insurance;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance.

**D.** Duties of the Additional Insured Vendor in the event of an "occurrence", claim, or "suit":

**1.** The Additional Insured Vendor must promptly give notice of an "occurrence", claim made against it, or "suit" to any other insurer that has insurance for a loss to which this insurance may apply.

**2.** The Additional Insured Vendor must promptly tender the defense of any claim made against it or "suit" to any other insurer with a policy under which such Additional Insured Vendor may qualify as a Named Insured or Additional Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT - MANAGERS OR LESSORS OF PREMISES

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance under the following:**

**LIFE SCIENCES GENERAL LIABILITY COVERAGE**
**LIFE SCIENCES PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**A.** **SECTION II – WHO IS AN INSURED** is amended to include as an Additional Insured any person(s) or organization(s) that you are required to include as an Additional Insured on this Policy by written contract in effect during the "policy period" and executed prior to the "occurrence" causing the "bodily injury" or "property damage", but only for vicarious liability for "bodily injury" or "property damage" imposed on the Additional Insured as manager or lessor of that part of the premises leased to you and that is solely caused by the ownership, maintenance, or use of that part of the premises leased to you by such person or organization.

However:

**1.** The insurance afforded to such Additional Insured only applies to the extent permitted by law; and

**2.** Such insurance will not be broader than that which you are required by the written contract to provide for such Additional Insured.

**B.** The insurance provided to the Additional Insured under this endorsement is limited as follows:

**1.** This insurance does not apply to any:

**a.** "Occurrence" that takes place after you cease to be a tenant in that premises;

**b.** Structural alteration, new construction, or demolition operation performed by or on behalf of the Additional Insured; or

**c.** "Bodily injury" or "property damage" arising out of:

**(1)** The sole negligence of the Additional Insured, any employee or agent of the Additional Insured, or any combination thereof; or

**(2)** Any obligation of the Additional Insured to indemnify another because of damages arising out of such injury or damage.

**2.** Where there is no duty to defend the "named insured", there is no duty to defend the Additional Insured. Where there is no duty to indemnify the "named insured", there is no duty to indemnify the Additional Insured.

**3.** The Additional Insured must be represented by the same counsel as the "named insured".

**C.** With respect to the insurance afforded to the Additional Insured, the following is added to **SECTION III – LIMITS OF INSURANCE AND DEDUCTIBLE**:

The most we will pay on behalf of the Additional Insured is the amount of insurance:

**1.** Required by the written contract; or

**2.** Available under the applicable Limits of Insurance;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance.

**D.** Duties of the Additional Insured in the event of an "occurrence", claim, or "suit":

**1.** The Additional Insured must promptly give notice of an "occurrence", claim made against it, or "suit" to any other insurer that has insurance for a loss to which this insurance may apply.

**2.** The Additional Insured must promptly tender the defense of any claim made against it or "suit" to any other insurer with a policy under which such Additional Insured may qualify as a Named Insured or Additional Insured.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the federal Terrorism Risk Insurance Act, as amended ("the Act"), the Company must make available insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act. This Policy includes such coverage for damages arising out of certified acts of terrorism and is limited by the terms, conditions, exclusions, limits, other provisions of the coverage quote or renewal application/questionnaire to which this offer is attached and by the Policy, any endorsements to the Policy and generally applicable rules of law.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM FOR WHICH THIS POLICY PROVIDES COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THE FORMULA, BEGINNING ON JANUARY 1, 2020, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.**

**NO PREMIUM IS CHARGED FOR THIS COVERAGE NOR IS ANY CHARGE MADE FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

***YOU SHOULD ALSO KNOW THAT THE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT, AS WELL AS INSURERS' LIABILITY FOR LOSSES, RESULTING FROM CERTIFIED "ACTS OF TERRORISM" WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.***

***COVERAGE FOR "INSURED LOSSES" AS DEFINED IN THE ACT IS SUBJECT TO THE COVERAGE TERMS, CONDITIONS, AMOUNTS AND LIMITS IN THIS POLICY APPLICABLE TO LOSSES ARISING FROM EVENTS OTHER THAN "ACTS OF TERRORISM".***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**SCHEDULE**

| **SCHEDULE - PART I** | |
|---|---|
| **Terrorism Premium (Certified Acts)** | **$** |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** | |

| **Additional information, if any, concerning the terrorism premium:** |
|---|
| |

**SCHEDULE - PART II**

| Federal Share of Terrorism Losses | 80% |
|---|---|
| (Refer to Paragraph B. in this endorsement.) Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

 © Insurance Services Office, Inc., 2020 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SIGNATURE ENDORSEMENT

| *Attached To and Forming Part of Policy* | *Effective Date of Endorsement* | *Named Insured* |
|---|---|---|
| 0100370510-0 | 05/07/2025 12:01AM at the Named Insured address shown on the Declarations | Hydroxie LLC |
| *Additional Premium:* REDACTED | *Return Premium:* REDACTED | |

**This endorsement modifies insurance provided under the following:**

**ALL COVERAGE FORMS**

By signing and delivering this policy to you, we state that it is a valid contract when signed as below by our authorized representatives.

Secretary

President

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

## ADVISORY NOTICE TO POLICYHOLDERS

This Notice shall not be construed as part of your policy and no coverage is provided by this Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages your policy provides.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous Foreign Agents, Front Organizations, Terrorists, Terrorist organizations and Narcotics traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site—http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a "Specially Designated National and Blocked Person", as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments and no premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.